**UNITED STATES of America**

v.

**Thomas N. SHIOMOS, Appellant.**

No. 88–1528.

United States Court of Appeals,
Third Circuit.

Submitted Dec. 5, 1988.
Decided Dec. 19, 1988.

F. Emmett Fitzpatrick, F. Emmett Fitzpatrick, P.C., Philadelphia, Pa., for appellant.

Joan L. Markman, U.S. Attys. Office, Philadelphia, Pa., for appellee.

Before SLOVITER and BECKER, Circuit Judges, and BARRY, District Judge.*

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Following an FBI investigation into corruption in the Philadelphia judicial system, Thomas Shiomos, who was then a Senior Judge of the Philadelphia Court of Common Pleas, was indicted on three counts of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (1982). He was convicted on two of the counts. On this direct appeal, Shiomos challenges, *inter alia*, the trial court's sequestration of the jury. We have jurisdiction under 28 U.S.C. § 1291 (1982).

I

In 1986 the FBI approached Barry Denker, a Philadelphia criminal lawyer, and confronted him with evidence that he had bribed a state parole officer some years earlier. Denker agreed to participate in an investigation into judicial corruption in the Philadelphia court system. As part of the investigation Denker agreed to tape record conversations with various judges, including appellant Shiomos, and to provide the government with opportunities to gather evidence of payoffs. On October 3, 1986 Denker met Shiomos on the street and paid him $300 "on account." App. at 679–685, 296–298. The transaction was videotaped by a Philadelphia police officer. This transaction formed the basis of Count Three of the indictment, on which Shiomos was convicted.

Shiomos was also charged with and convicted of extortion on the basis of evidence showing that on or about December 10, 1985, he received $300 from a slush fund

controlled by Steven Traitz, Business Manager of the Roofers' Union, Local 30–30B. Electronic surveillance of activities of the Roofers' Union established that the $300 was one of a group of payments made to Common Pleas judges and other local officials for the general purpose of obtaining favorable results in matters involving union members. Grand jury testimony, given by Shiomos, was read into the record by FBI agent Welch which revealed that Shiomos had received such presents, which Shiomos assumed to be from the Roofers' Union, on several occasions, including the one charged in Count Two of the indictment. Nine or ten days after receiving the gift charged in the indictment, Judge Shiomos imposed a reduced sentence on Ronald Botson, a member of the Roofers' Union charged with aggravated assault, reckless endangerment, and weapons charges.

Denker testified that, prior to the investigation, he also made payments to Judge Shiomos on several occasions from late 1983 or early 1984 to July 1985 to influence various pretrial and trial decisions in the *Botson* case. Those payments formed the basis of Count One of the indictment, on which Shiomos was acquitted.

Shiomos was sentenced to two years imprisonment on Count Two, to be followed by five years probation imposed on Count Three and a $6,000 fine, with a special assessment of $50 on both counts.

II

In this appeal, Shiomos challenges the district court's right to direct sequestration of the jury *sua sponte*, an issue which this court has not previously addressed. The district court ordered the jury's sequestration because of concern that Shiomos' case would generate significant amounts of publicity, as had the other cases arising out of the FBI investigation of the Philadelphia judiciary. Neither party requested sequestration, and Shiomos specifically opposed it on the ground that qualified jurors, espe-

* Hon. Maryanne Trump Barry, United States District Court for the District of New Jersey, sitting by designation.

cially housewives, single parents or those taking care of aged parents, would not be able to serve on the jury because of the sequestration. In fact, five jurors were excused for cause on the ground that sequestration would impose a hardship. Counsel for Shiomos noted that he would have approved two of the jurors who were so excused.

Although Shiomos asserts that the decision to sequester was error, he does not articulate the precise legal rationale for this claim. Presumably, his claim is that his right to select a jury, protected by the Sixth and Fourteenth Amendments, was violated because the jury did not include those jurors who would have been acceptable, but for the sequestration.

The parties agree that a decision not to sequester the jury is in the sound discretion of the trial judge. *See Holt v. United States* 218 U.S. 245, 251, 31 S.Ct. 2, 5–6, 54 L.Ed. 1021 (1910). We so held in *United States v. De Peri*, 778 F.2d 963, 972–73 (3d Cir.1985) (refusal to sequester not an abuse of discretion), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986).

Shiomos claims, however, that it was an abuse of discretion for the trial court to make a decision to sequester *sua sponte*, over the objection of the defendant. Although ordinarily the issue of sequestration has arisen in the context of district court orders refusing to sequester it has also been held that a jury may be sequestered over the objection of a criminal defendant. *See United States v. Haldeman*, 559 F.2d 31, 85 n. 135 (D.C.Cir.1976) (citing *Baker v. United States*, 401 F.2d 958, 968 (D.C.Cir.1968)), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *see also United States v. Morrone*, 502 F.Supp. 983, 1002–03 (E.D.Pa.1980), *aff'd sub nom. Appeal of Morrone*, 672 F.2d 905 (3d Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1433, 71 L.Ed.2d 652 (1982).

We find it particularly instructive that the Supreme Court, in holding that a defendant's due process rights were violated by the publicity given to his state court trial, stated that in order to protect a defendant's right to a trial by an impartial jury free from outside influence, "sequestration of the jury was something the judge should have raised *sua sponte* with counsel." *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966). We have found one decision even before the *Sheppard* case holding that the district court has the discretion to sequester the jury *sua sponte* over defense objection. *See United States v. Holovachka*, 314 F.2d 345, 351–53 (7th Cir.), *cert. denied*, 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed. 2d 1033 (1963).

The rationale of that decision and of the Supreme Court's admonition is equally applicable here. Sequestration reasonably motivated by the trial court's concern for defendant's constitutional rights is entirely appropriate. Moreover, the trial court has a responsibility to the public as well as to the defendant to maintain the integrity of the criminal process. Recently, we upheld the trial court's use of an anonymous jury over the objection of the defendant, noting that "[t]he courts of appeals have recognized that trial judges must have wide discretion in maintaining courtroom security and in protecting their processes from outside interference." *United States v. Scarfo*, 850 F.2d 1015, 1024 (3d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988).

The record demonstrates that there was a reasonable basis for the district court's concern that the jurors would find it difficult to disregard the publicity accompanying the trial. Although we do not hold that sequestration was mandated in these circumstances, neither can we hold that the trial judge, who was on the scene and had a vantage point superior to ours, abused his discretion in directing sequestration of the jury to ensure the defendant and the public a fair trial. The decision to sequester the jury was a completely rational response to a situation that threatened to disrupt the process of an orderly trial.

We also note that Shiomos has not argued that the decision to sequester the jury tainted the jury composition in any meaningful way. Shiomos has not shown that some class of jurors was improperly ex-

cluded by the order to sequester, or that the panel ultimately chosen was in any way not impartial. Although the jury composition was presumably different than it would have been had there been no sequestration, the Supreme Court recently held that when the jury composition is challenged, there is no reversible error unless there is some showing that the panel chosen was in some way not impartial. *Ross v. Oklahoma*, — U.S. —, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988). In the absence of any such showing, we reject Shiomos' challenge to the order sequestering the jury.

### III

Shiomos raises certain other contentions all of which we have considered and reject.[1]

For the reasons set forth we will affirm the judgment of conviction and sentence imposed by the district court.

---

**1.** Shiomos' remaining contentions are that there was insufficient evidence to show an effect on interstate commerce or an agreement or attempt to effect [sic] interstate commerce; the court erred in admitting tape recorded conversations of individuals who were not co-conspirators; the court erred in allowing evidence of prior offenses and the court allowed improper examination of character witnesses.