UNITED STATES of America, Plaintiff,

v.

John GOTTI, et al., Defendants.

No. CR–90–1051.

United States District Court,
E.D. New York.

Nov. 14, 1991.

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Albert J. Krieger, Miami, Fla., for John Gotti.

David Greenfield, New York City, for Frank Locascio.

John W. Mitchell, LaRossa, Mitchell & Ross, New York City, for Frank Locascio.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The government has moved this court for an order directing that the jury in this case be selected anonymously and that the jury be sequestered. The bases upon which this motion is made are as follows:

In an affidavit by Patrick J. Cotter, an Assistant United States Attorney, the government relates that in the course of the trial of the case captioned *United States v. John Gotti*, 85–CR–178 (EHN), Matthew Traynor was called as a witness for the defense. He testified that the prosecutors sought to induce him to lie under oath concerning the defendants' involvement in various crimes "by providing him with controlled substances and helping him to achieve sexual gratification." At the conclusion of that trial, the presiding judge, Judge Nickerson, in a letter to then Chief Judge Weinstein dated March 16, 1987, wrote that after listening to Traynor and observing him while he testified, he found Traynor's testimony to be deliberately false. That assessment of Traynor's credibility was subsequently confirmed by Traynor's plea of guilty to perjury based upon that testimony. A transcript of a deposition of Traynor was made part of the record of the proceedings at which he pleaded guilty. In that sworn deposition, Traynor identified John Gotti, Gene Gotti

and their attorneys as having suborned the perjury of which he was convicted.

In another affidavit subsequently submitted in support of this motion, John P. Mullaney, a Special Agent of the Federal Bureau of Investigation, sets forth the results of an investigation into allegations of jury tampering and obstruction of justice in connection with the case captioned *United States v. Venero Mangano, et al.*, 90–CR–449 (RJD). One of the defendants in that case is Peter Gotti, the brother of John Gotti and an alleged "capo" in the Gambino organized crime family.

In 1984, John Gotti was identified by Romual Piecyk as one of two men who had assaulted him. Notwithstanding his prior identification of Gotti and his testimony before a grand jury which resulted in Gotti's indictment, Piecyk refused to identify Gotti at trial. Judge Nickerson found, following an evidentiary hearing, that Piecyk refused to identify Gotti because he was discouraged from doing so by intimidation attributable directly and indirectly to Gotti. *See United States v. Gotti*, 794 F.2d 773, 779 (2d Cir.1986).

Angelo Ruggiero, Gene Gotti (John Gotti's brother) and John Carneglia were indicted and tried on narcotics charges before an anonymous jury in 1987. They were members of the Gambino Family. *United States v. Ruggiero*, 846 F.2d 117 (2d Cir.), *cert. denied*, 488 U.S. 966, 109 S.Ct. 491, 102 L.Ed.2d 528 (1988). A distinct possibility of jury tampering in that case, for which the defendants bore responsibility, gave rise to a grand jury investigation and a mistrial. The second trial resulted in a deadlocked jury and the third trial of Carneglia and Gene Gotti commenced in 1989. The efforts made to tamper with that jury, and thus obstruct the administration of justice, are set out in the Government's Memorandum in Support of its Motion for an Anonymous and Sequestered Jury ("Memo") at pages 13–15 and will not be repeated here. Suffice it to say that there is reason to believe that persons affiliated with John Gotti and the Gambino Family are implicated in those efforts and

an investigation of that episode has not yet been concluded.

Electronically intercepted conversations which form the basis for several charges in the current indictment confirm that the defendants do not suffer from any inhibitions regarding the subversion of the judicial process by any means through which such subversion can be successfully accomplished. (Memo, 15–17).

■ With the foregoing as the factual predicate, coupled with the extraordinary publicity that has been and will continue to be given to this trial, the court is driven to conclude that the government's motion for an anonymous and sequestered jury must be granted. Given that factual context, a discussion of the legal principles which compel that conclusion follows.

## I. *Anonymous Juries*

The United States Court of Appeals for the Second Circuit most recently addressed the issues to which an anonymous jury gives rise in *United States v. Vario*, 943 F.2d 236 (2d Cir.1991), writing as follows:

> In a line of decisions, we have held that when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights. [Citations omitted]
>
> \*     \*     \*     \*     \*     \*
>
> In *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir.1985), we outlined the basic standard for determining when the use of an anonymous jury is constitutional: "there must be, first, strong reason to believe that the jury needs protection and, second, reasonable precaution must be taken to minimize the effect that such a decision might have on jurors' opinions of the defendants."

943 F.2d at 239.

Other circuits have endorsed the practice of concealing personal information about jurors. *See, e.g., United States v. Scarfo*, 850 F.2d 1015 (3rd Cir.), *cert. denied*, 488 U.S. 910, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988). In this circuit, the anonymity of a jury has been sustained on numerous occasions. In one of the earlier cases in which

the court commented upon the issue, it wrote that threats to jurors conveyed in unsigned letters

> demonstrates the need for precautions assuring that the addresses, and perhaps even the names, of jurors in cases such as this will be held in confidence; *courts must protect the integrity of criminal trials against this kind of disruption, whether it emanated from defendants' enemies, from their friends, or from neither.*

*United States v. Borelli*, 336 F.2d 376, 392 (2d Cir.1964) (emphasis added), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965).

The court in *United States v. Edmond*, 730 F.Supp. 1144 (D.D.C.1990) concluded after examining the cases in which anonymous juries were considered that a court

> must balance, on the one hand, the interests of the criminal justice system—protecting the jurors and their families from violence, actual or threatened, and shielding the jurors from the potential taint of extensive trial-related publicity—and, on the other hand, the defendants' interests—conducting a meaningful *voir dire* to permit the intelligent exercise of their peremptory challenges and retaining their presumption of innocence.

730 F.Supp. at 1145.

In *Scarfo*, after observing that a "juror's fears of retaliation from criminal defendants are not hypothetical [and that] such apprehension has been documented," the court continued:

> As judges, we are aware that, even in routine criminal cases, veniremen are often uncomfortable with disclosure of their names and addresses to a defendant. The need for such information in preparing an effective defense is not always self-evident. If, in circumstances like those in *Barnes*,[1] the anonymity promotes impartial decision making, that result is likely to hold equally true in less celebrated cases.

The virtue of the jury system lies in the random summoning from the community of twelve "indifferent" persons—"not appointed till the hour of trial"—to decide a dispute, and in their subsequent, unencumbered return to their normal pursuits. *See* 3 W. Blackstone, *Commentaries* \* 378. The lack of continuity in their service tends to insulate jurors from recrimination for their decisions and to prevent the occasional mistake of one panel from being perpetuated in future deliberations. *Because the system contemplates that jurors will inconspicuously fade back into the community once their tenure is completed, anonymity would seem entirely consistent with, rather than anathema to, the jury concept. In short, we believe that the probable merits of the anonymous jury procedure are worthy, not of a presumption of irregularity, but of disinterested appraisal by the courts.*

850 F.2d at 1023 (emphasis added).

The factors that have driven me to conclude that an anonymous jury is required in this case are compelling. There is an urgent need to protect the integrity of this trial against efforts to subvert its processes. The defendant Gotti, members of the Gambino Family, and others have all demonstrated a willingness to attempt, if not to accomplish, such subversion in the past.

▮ Jurors cannot be expected to gamble on what might befall them if a verdict of guilty is returned. The ability of a jury to render a fair and impartial verdict may be adversely affected by even a general fear of retaliation, and a distinct possibility of a serious threat to the safety of jurors requires that precautionary measures be taken. *United States v. Thomas*, 757 F.2d 1359, 1364 (2d Cir.1985). The extensive publicity this case has garnered thus far (and is certain to attract during each day of trial until a verdict is returned) is another factor requiring an anonymous jury. In repeated applications to conduct *in camera*

---

**1.** *United States v. Barnes*, 604 F.2d 121 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

proceedings and to keep all submissions sealed, the defendants have urged the necessity of keeping publicity to an absolute minimum lest the defendants' right to a fair trial be adversely affected by a polluted pool of jurors. "[A]nonymity and sequestration measures will serve the ... purpose of ensuring that the jurors are not exposed to members of the media or to publicity about the trial." *Edmond,* 730 F.Supp. at 1148. Anonymity and sequestration will also serve to protect the rights of privacy of the jurors and their families. *United States v. Tutino,* 883 F.2d 1125, 1132 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Ferguson,* 758 F.2d 843, 854 (2d Cir.), *cert. denied,* 474 U.S. 841 & 1032, 106 S.Ct. 124 & 592, 88 L.Ed.2d 102 & 572 (1985); *United States v. Barnes,* 604 F.2d 121, 141 (2d Cir.1979).

The jury selection process (*voir dire*) is not a matter of constitutional dimension and the selection of an anonymous jury was implicitly held to be constitutional in *Barnes. See Thomas,* 757 F.2d at 1364. The defendants do not contend that jury anonymity negates the presumption of innocence, nor could they. Although the due process clause of the Fifth Amendment protects the presumption of innocence, "there is no *per se* rule that it may not be burdened." *Thomas,* 757 F.2d at 1364; *see also Scarfo,* 850 F.2d at 1026. Balancing the government's interest in safeguarding both the jurors and the integrity of the judicial process against the defendants' interest in preserving the integrity of the presumption of innocence, the scale weighs heavily in favor of the government.

## II. *Sequestered Juries*

The decision to sequester the jury is one which rests in the sound discretion of the trial judge. *Holt v. United States,* 218 U.S. 245, 251, 31 S.Ct. 2, 5–6, 54 L.Ed. 1021 (1910); *United States v. Shiomos,* 864 F.2d 16, 18 (3rd Cir.1988); *United States v. Persico,* 832 F.2d 705, 718 (2d Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988); *Baker v. United States,* 401 F.2d 958, 968 (D.C.Cir.1968); *United States v. Breland,* 376 F.2d 721, 723–24 (2d Cir.1967). Sequestration may be ordered notwithstanding the objection of the defendant. *Shiomos,* 864 F.2d at 18. The grounds upon which the decision to empanel an anonymous jury were based also compel the conclusion that the jury should be sequestered. In *United States v. Edmond,* 730 F.Supp. 1144, 1145 n. 1 (D.D.C.1990), the court recognized that the only way to assure the anonymity of a jury, as a practical matter, is to sequester them and that a decision on anonymity will also determine whether the jury should be sequestered.

In prior proceedings in this case, namely, the proceeding to determine whether the defendants should be detained pretrial and the proceeding to determine whether certain defense counsel should be disqualified, the defendants urged the court to conduct the proceedings *in camera* and to direct that all submissions pertaining to those proceedings be kept under seal. They argued that the virtually unprecedented publicity attendant upon any case involving John Gotti, and particularly this one, would impair his Sixth Amendment right to a fair trial were those proceedings to be made public. They contended that the jury pool would be irrevocably tainted and that even a searching *voir dire* could not cleanse it.

In opposing the government's motion for an anonymous and sequestered jury, the defendants recognize "that media coverage of this trial has and will be extraordinary." (Defs. Memo at 8). They nevertheless contend that "[t]he traditional methods of attempting to guarantee both sides a fair trial in the face of potentially prejudicial news coverage has heretofore always consisted of careful screening of jurors and of making available to the defendants, if they choose, such remedies as continuance, change of venue and/or mistrial." (Defs. Memo at 8). The suggestion that the recited remedies are solely a matter of defendants' choice is questionable, to say the least, and the recognition that the prejudicial publicity in this case may require a mistrial is a tacit recognition of the necessity for sequestration.

The defendants' inconsistent view of the impact of the extraordinary publicity upon the defendants' right to a fair trial and upon the integrity of the judicial process is reminiscent of an observation made in another context in *Wheat v. United States*, 486 U.S. 153, 161, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988): "trial courts confronted with [sequestration decisions] face the prospect of being 'whipsawed' by assertions of error no matter which way they rule." The accuracy of that observation is confirmed by cases such as *United States v. Persico*, 832 F.2d 705, 718 (2d Cir.1987) (Carmine Persico claimed error predicated on Judge Keenan's decision not to sequester the jury during the eight-month trial), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988); *United States v. Bakker*, 925 F.2d 728, 734 (4th Cir.1991) (Bakker argued that the trial court's refusal to grant his motion to sequester the jury unjustifiably exposed the jury to influences from the media and public opinion); *Baker v. United States*, 401 F.2d 958, 968 (D.C.Cir.1968) (defendant contended that sequestering the jury was not justifiable); *United States v. Hoffa*, 367 F.2d 698, 711 (7th Cir.1966) (Hoffa argued that sequestration was patently at odds with basic American traditions where jury housed at Great Lakes Naval Station), *vacated*, 387 U.S. 231, 87 S.Ct. 1583, 18 L.Ed.2d 738 (1967); and *United States v. Holovachka*, 314 F.2d 345, 352 (7th Cir.) (defendant argued that sequestration was coercive in its effect on the verdict of the jury), *cert. denied*, 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963). Finally, it is interesting to note that in *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966) the Supreme Court, in holding that the defendant's due process rights were violated by trial publicity, stated that "sequestration of the jury was something the judge should have raised *sua sponte* with counsel" to protect the defendant's right to a trial by an impartial jury free from outside interference.

The court is not indifferent to the unusual burdens sequestration places upon jurors beyond those they already bear in discharging their civic responsibility to jury service. It firmly believes, however, that a properly instructed jury will willingly bear that burden and discharge that responsibility toward the end that the integrity of the judicial process, as well as the defendants' right to a fair trial and to an impartial jury, will be realized.

For the reasons stated in granting the government's motion for empaneling an anonymous jury, the government's motion to sequester that jury is also granted.

SO ORDERED.