**UNITED STATES of America, Plaintiff,**

v.

**Thomas GAMBINO, et al., Defendants.**

**No. CR–90–1051 (S–3).**

United States District Court,
E.D. New York.

April 15, 1993.

See also 818 F.Supp. 541.

Laura Ward, Geoffrey S. Mearns, Asst. U.S. Attys., for U.S.

Michael Rosen, Judd Burstein, New York City, for Thomas Gambino.

Murray Richman, Bronx, N.Y., for Philip Loscalzo.

Jay Goldberg, New York City, for Guiseppe Gambino.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendants have made motions *in limine* which, if granted would, (1) restrict the government's use of expert testimony; (2) preclude the admission into evidence of Count One of Anthony Megale's Connecticut indictment together with portions of the government's proffer made in connection with Mr. Megale's guilty plea; and (3) permit the defendants to introduce proof of Thomas Gambino's prior federal acquittal.

The government has also made such a motion which, if granted would, (1) limit the cross-examination of Salvatore Gravano as will be hereafter explicated; (2) preclude the defendants from mentioning in their opening statements evidence which they may not be permitted to elicit in cross-examining Gravano; and (3) have an anonymous jury empaneled.

I

### THE DEFENDANTS' MOTIONS

#### A. *Barring Expert Testimony*

■ The defendants contend that the decision in *United States v. Cruz*, 981 F.2d 659 (2d Cir.1992), compels the conclusion that the court should not permit an expert witness called by the government to testify as to matters which will be the subject of testimony by Salvatore Gravano. The defendants also urge that to negate the possibility of overlap in the testimony of the two witnesses, the government should be directed to call Mr. Gravano to testify prior to its expert witness.

In *Cruz*, an accomplice testified that the defendant acted as a broker for drug transactions between a drug dealer in the Albany area and drug suppliers located in the Washington Heights area of Manhattan. His testimony described the sequence of events from the time he and the dealer from Albany arrived in Manhattan to meet the drug supplier until the completion of the transaction. The government also called a Special Agent of the Drug Administration as an expert witness who described how drug transactions in Washington Heights were consummated and the role of the broker in that process. His testimony was relied upon heavily by the government in its summation. In deciding that the expert should not have been permitted to testify, as he did, to matters which went well beyond explaining that "drug wholesalers often use intermediaries and

make deliveries away from the actual focus of the drugs as means of avoiding identification and arrest," which would have been permissible, the court held that the government's principal use of the expert was to bolster the accomplice's testimony, which was impermissible. In so holding, the court did not announce a new principle as the defendants' argument suggests. It merely reaffirmed its holding in *United States v. Castillo*, 924 F.2d 1227 (2d Cir.1991), that the government may not use an expert witness to bolster the testimony of a fact-witness which is not attacked as being improbable or ambiguous. The *Cruz* court made plain that it was not abandoning commonly understood rules regulating the propriety of receiving expert testimony. Rather, it reaffirmed the proper use of such testimony as to operations having "esoteric aspects reasonably perceived as beyond the ken of the jury" and "to explain even non-esoteric matters, when the defense seeks to discredit the government's version of events as improbable criminal behavior." 981 F.2d at 664.

The threshold inquiry, therefore, is whether expert testimony is admissible to explain the operation, structure, membership and terminology of organized crime families. That is, are such matters "reasonably perceived as beyond the ken of the jury"? The defendants' contention that they are not, given the extent to which the public is exposed by the print and visual media to organized crime, completely ignores the cases which are unanimous in holding that such matters are beyond the ken of a jury and that expert testimony as to such matters is admissible. *See, e.g., United States v. Skowronski*, 968 F.2d 242 (2d Cir.1992); *United States v. Tutino*, 883 F.2d 1125 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Angiulo*, 847 F.2d 956 (1st Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 138, 102 L.Ed.2d 110 (1988); *United States v. Daly*, 842 F.2d 1380 (2d Cir.), *cert. denied*, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *United States v. Ardito*, 782 F.2d 358 (2d Cir.), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 338 (1986).

■ The defendants' request that the government be directed to call Mr. Gravano prior to the expert runs the risk of replicating the sequence of testimony in *Cruz* and the implication that sequence suggested that the expert's testimony was designed to bolster the testimony of the accomplice. Although there is nothing in *Cruz* which mandates that there be no overlap of testimony as between the expert and the accomplice, the government would be well-advised to limit the testimony of the expert to *explaining* the operation, structure, membership and terminology of organized crime families and to *limit* the accomplice testimony to the facts which, the government contends, will prove the allegations of the indictment. That is to say, the government would be well-advised to pay appropriate attention to the teaching of *Cruz*.

The defendants' motion in this regard assumes an anticipatory breach of the *Cruz* principle which it would have the court enjoin by precluding expert testimony. This motion is premature and is denied.

### B. *Megale's Connecticut Guilty Plea*

■ In the course of the trial of *United States v. Gotti* the court permitted the government to introduce and read to the jury portions of the proffer made by the prosecution incident to Megale's guilty plea and the count of the indictment to which he pleaded guilty. The plea occurred in the federal court in Connecticut. The defendants request that the court reconsider its ruling for this case. They also request that if the Connecticut prosecution's proffer be admitted, it be limited to reflect only the scope of Megale's acknowledgment of guilt.

The defendants have not called the court's attention to any significant authority which the court overlooked when it made its initial determination that the evidence now sought to be excluded or restricted was admissible. Conscious as I am of the necessity for judicial humility to recognize and acknowledge an erroneous ruling and to correct it, I neither recognize nor acknowledge error in this regard. The defendants' motion is denied.

### C. *Proof of Thomas Gambino's Prior Acquittal*

■ The defendant seeks a ruling from this court which would allow him to argue to the jury that the government's frustration with its inability to successfully prosecute him in the past has driven it to design this totally fabricated prosecution, intent upon convicting him at all costs. He characterizes this prosecution as a government inspired frame-up engineered by biased agents "more concerned with securing Mr. Gambino's conviction than with finding the truth" and who "can easily ignore or suppress exculpatory evidence which they uncover in the investigative process." (Defendants' Memorandum in Support of In Limine Motions, at 17–18).

In his memorandum the defendant correctly anticipates that the government will rely upon *United States v. Viserto*, 596 F.2d 531, 536–37 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). That case is clearly dispositive of this motion insofar as it held that:

> A judgment of acquittal is relevant to the legal question of whether the prosecution is barred by the constitutional doctrine of double jeopardy or collateral estoppel. But once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted. Not only does the inference appellants suggest not flow from the judgment of acquittal ..., but also a judgment of acquittal is hearsay. The Federal Rules of Evidence except from the operation of the hearsay rule only judgments of conviction, Rule 803(22), not judgments of acquittal.

The defendant seeks to avoid the barrier of Rule 803(22) by the expected assertion that the proof is not being offered for the truth of the matter asserted, but rather to establish the government's bias against Mr. Gambino. That assertion is disingenuous. The acquittal is being offered precisely for its truth. Even if one were to assume that it is not hearsay, it would be inadmissible as irrelevant. Relevant evidence is defined by Rule 401, Fed.R.Evid., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." It takes a quantum leap of logic and a fractured syllogism to say that evidence of an acquittal tends to make government bias more probable than it would be without that evidence. In addition, even if such evidence had any evidentiary value, the danger it would present for confusion of the issues and misleading the jury substantially outweighs its probative worth.

*Viserto* is viewed favorably in other circuits addressing the issue. In *United States v. Kerley*, 643 F.2d 299 (5th Cir.1981), the court wrote that "... evidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior proceeding failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." The *Kerley* court went on to note that "[u]nder Rule 403 a trial judge has broad discretion to exclude otherwise relevant evidence, *even where bias or interest of a witness is involved....* Because the elements of the state ... charge were entirely different from the elements of the federal charges in this case, the probative value of evidence of Kerley's acquittal on that charge was substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. We conclude that the trial court did not abuse its discretion in excluding for lack of relevancy evidence of the state court acquittal." 643 F.2d at 300–01 (emphasis added); *see also Prince v. Lockhart*, 971 F.2d 118, 122 (8th Cir.1992); *United States v. Jones*, 808 F.2d 561 (7th Cir.1986); *United States v. Irvin*, 787 F.2d 1506, 1517 (11th Cir.1986).

## II

### THE GOVERNMENT'S MOTIONS

### A. *Limiting Cross–Examination of Gravano*

■ The government seeks an order which would preclude the defendants from dissecting the crimes Gravano committed into their minutest details, recognizing of course that he may properly be cross-exam-

**540**

ined as to the crimes themselves. This issue was considered at great length in the *Gotti* case where a similar motion made by the government was granted. In making that ruling, the court relied upon the substantial authority placing the scope and extent of cross-examination generally within the sound discretion of the trial court. Illustrative of such authority are: *United States v. Caming*, 968 F.2d 232, 237 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 416, 121 L.Ed.2d 339 (1992); *United States v. Maldonado–Rivera*, 922 F.2d 934, 956 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991); *United States v. Singh*, 628 F.2d 758, 763 (2d Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980). Particularly persuasive in this regard is *United States v. Kopituk*, 690 F.2d 1289, 1337 (11th Cir.1982) ("The claim that the method of killing that was to be employed in executing the murder contract (i.e., attack with an ice pick) was critical to appellants' efforts to discredit Teitlebaum's testimony lacks any persuasive merit. As the trial judge aptly noted, the fact that death was to be effectuated through a 'pill or a gun or an ice pick' did not in any way impact upon Teitlebaum's credibility."). This motion of the government is granted as is their motion to preclude the defendants from mentioning the details of the crimes in their opening statements to the jury.

### B. *Empaneling an Anonymous Jury*

██ The standards to be observed in informing the court's judgment whether to grant a motion to select a jury anonymously have been reviewed in *United States v. Gotti*, 777 F.Supp. 224 (E.D.N.Y.1991), and more recently in *United States v. Gambino*, 809 F.Supp. 1061 (S.D.N.Y.1992), familiarity with which will be assumed.

The defendants are not charged with jury tampering or with obstruction of justice in any other respect. That "has always been a crucial factor" in deciding whether an anonymous jury should be selected. *United States v. Vario*, 943 F.2d 236, 240 (2d Cir.1991). The extent to which the trial of this case will attract widespread publicity is as yet uncertain. Thus far, it has attracted virtually

none, although another case in the Southern District, also captioned *United States v. Gambino* has attracted and continues to attract considerable media attention. A careful instruction to the jury panel should serve to differentiate that case from this one.

An analysis of the bases upon which the government rests its request for an anonymous jury leads to the conclusion that it relies essentially upon "[t]he invocation of the words 'organized crime,' 'mob,' or 'mafia,'" which will not suffice. *Vario*, 943 F.2d at 241. Carried to its logical conclusion, an anonymous jury would be selected in every case in which a member of an organized crime family is indicted. There is no evidence that these defendants either participated in or directed efforts to obstruct justice, tamper with juries or intimidate witnesses. It is not enough that other members of the organized crime family with which they are allegedly aligned may have done so. The government has made no satisfactory showing of a reasonable likelihood of juror intimidation.

Ultimately, a balance must be struck between the integrity of the criminal justice system and the jurors' concern for their own well-being and the preservation and meaningful efficacy of the presumption of innocence. Based upon the submissions before me, the balance is struck in favor of the latter.

The government and the defendants have requested an individualized voir dire and an agreed upon questionnaire. That request is granted. The court is constrained to add this caveat. If, in the course of the voir dire, it becomes apparent to the court that prospective jurors express or manifest concern for their safety and extensive pretrial attention is paid to the proceedings by the print and visual media, reconsideration will be given to empaneling an anonymous jury.

SO ORDERED.