**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 30 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ALEXIS MIRANDA,

    Defendant-Appellant.

No. 00-2052

(D.C. No. CR-98-935-BB)

(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY, ANDERSON,** and **BRISCOE** , Circuit Judges .

---

Alexis Miranda appeals his four convictions under 21 U.S.C. § 841 on the

ground that the trial court erred by excluding evidence of bias on the part of the

police. We affirm.

I.

Miranda was one of approximately thirty defendants charged with various

drug offenses as a result of a Drug Enforcement Administration (DEA) task force

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

investigation. His defense to the charges was that he was misidentified on the videotapes. He was acquitted. According to Miranda, law enforcement officers present when the acquittal was announced were hostile and looked at him with hatred. After the acquittal, Juan Valencia, Miranda's attorney, advised Miranda to leave town because of the hostility of law enforcement officers toward him. The events giving rise to the present prosecution occurred sometime after the acquittal.

According to testimony at the trial in the present prosecution, Albuquerque Police Detective Jay Rajaee purchased $20 rocks of cocaine from Miranda on October 19 and 23, 1998. After the October 19 purchase, DEA Special Agent Steve Lillerd contacted Rajaee to inform him that he had seen Miranda while he was conducting surveillance in a separate investigation. Lillerd had been the co-case agent in the case where Miranda was acquitted. On October 28, Police Officer Andrew Perez purchased a rock of crack cocaine from Miranda using a marked $20-bill. Miranda was arrested approximately five minutes later. The $20-bill was not found, but a bag containing six rocks of crack cocaine was found. At trial, Miranda sought to introduce testimony from Valencia that law enforcement officials had reacted with hostility to Miranda's acquittal and that Valencia had warned Miranda to leave town. The trial court refused admission of the testimony, concluding it was not relevant and was prejudicial. A jury

convicted Miranda of three counts of distributing cocaine base and one count of possession with intent to distribute, in violation of 21 U.S.C. § 841. Miranda was sentenced to thirty-three months in prison.

II.

We review the trial court's decision to exclude evidence for an abuse of discretion. See United States v. McVeigh, 153 F.3d 1166, 1199 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999). We will not find an abuse of discretion unless we develop a definite and firm conviction that the trial court made a clear error of judgment. See United States v. Levine, 970 F.2d 681, 688 (10th Cir. 1992).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence of witness bias is generally considered relevant. See United States v. Abel, 469 U.S. 45, 52 (1984). However, evidence of a prior acquittal is generally not considered relevant except as it affects questions of double jeopardy or collateral estoppel. See United States v. Jones, 808 F.2d 561, 566 (7th Cir. 1986).

Miranda argues that Valencia's testimony would have supported his defense that the police had framed him because they were biased against him as a

3

result of the prior acquittal.  A similar issue was raised in United States v. Gambino, 818 F. Supp. 536, 539 (E.D. N.Y. 1993).  Gambino sought to introduce evidence of his prior acquittal to show the government's bias toward him.  The court concluded such evidence was not relevant, noting that "[i]t takes a quantum leap of logic and a fractured syllogism to say that evidence of an acquittal tends to make government bias more probable than it would be without that evidence." Id.  Since Valencia would have testified about law enforcement officials in general rather than about any specific officer, his testimony would have added little.  To get from Valencia's testimony to the conclusion that Miranda was framed would require many leaps of logic.  Valencia's testimony is not probative enough to be considered relevant. [1]  Even if the evidence was relevant, any error by the trial court in excluding it was harmless.  "A non-constitutional error, such as a decision whether to admit or exclude evidence, is considered harmless 'unless a substantial right of [a] party is affected." United States v. Charley, 189 F.3d 1251, 1270 (10th Cir. 1999) (quoting Fed. R. Evid. 103(a)), cert. denied, 120 S. Ct. 842 (2000).  Miranda argues that the error was not harmless because the officers' credibility was critical to the government's case.  There are several

---

[1] The trial court found that whatever probative value the testimony might have was outweighed by its confusing and prejudicial effect.  We agree.  A general indictment of law enforcement with no specific allegations regarding any officer testifying or involved with the current case is likely to confuse the jury and cause the jury to erroneously distrust the testimony of all police officers.

bases to support the conclusion that any error made with respect to admission of this evidence was harmless.

First, Miranda himself testified that the law enforcement officials looked at him with hatred and that he was advised to leave town. Valencia's testimony, while potentially more credible than Miranda's, would have been duplicative.

Second, Miranda's testimony would have supported the alleged bias of officers who were in the courtroom at the time the acquittal was announced. None of the officers who were involved in the drug purchases at issue in the present case (and whose testimony was most important for the government) were in the courtroom when the acquittal was announced. In fact, there is no evidence that any of the law enforcement officials in the courtroom when the acquittal was announced were involved in this case in any manner.

Third, the evidence against Miranda in the present case was very strong. Two officers testified that they had purchased rocks of cocaine from Miranda on three separate occasions and the jury heard audiotapes of two of the drug purchases. A bag containing rocks of cocaine was found near Miranda on the night that he was arrested and was located where Perez saw Miranda bury it. None of this evidence is directly refuted by Valencia's proffered testimony.

Fourth, only Lillerd's testimony is arguably placed in question by Valencia's testimony. However, counsel conceded at oral argument there is no

5

evidence that Lillerd was in the courtroom when the acquittal was announced so Valencia's testimony would not directly place either Lillerd's motives or testimony in question. Further, Lillerd's role in the present case was minor. His testimony helped establish the chain of evidence with respect to the rocks of crack cocaine that Miranda sold to Rajaee. Lillerd also laid the foundation for admission of exhibits. He testified that he saw Miranda on the street the day of the first drug purchase and he called Rajaee to inform him of Miranda's presence. [2] Even if Valencia's testimony would have cast doubts in the minds of the jury about Lillerd's credibility, it is unlikely those doubts would have resulted in a different verdict because of the relative unimportance of Lillerd's testimony.

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[2] Miranda argues that Lillerd's call to Rajaee proves bias. However, Rajaee had already made the first drug purchase at the time of the call and there is no reason to believe that Lillerd's call was part of a set up.