**UNITED STATES of America,
Plaintiff,**

v.

**Liborio BELLOMO, et al., Defendants.**

**No. 02 CR 140 ILG.**

United States District Court,
E.D. New York.

March 10, 2003.

Flora Edwards, Dublirer Haydon Straci & Victor, New York City, for defendant.

Paul Schoeman, U.S. Attorney's Office, Crim. Div., Brooklyn, NY, for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

This Memorandum and Order will address three additional motions, one filed by the government requesting the Court to direct that an anonymous jury be empaneled and that it be partially sequestered and one by the defendants requesting permission to examine the minutes of the grand jury that returned this indictment and a renewed motion for a severance made by Andrew Gigante.

### A. *The Government's Motion*

The factors informing a determination of a motion to empanel an anonymous and sequestered jury are not unknown to this Court. Those factors were discussed and considered most extensively in *United States v. Gotti,* 777 F.Supp. 224 (E.D.N.Y. 1991), aff'd. sub nom *United States v. Locascio,* 6 F.3d 924 (2d Cir.1993) and most recently in *United States v. Fortunato,* 2002 WL 31946813 (E.D.N.Y.2002), *see also United States v. Gambino,* 818 F.Supp. 536, 539–40 (E.D.N.Y.1993), familiarity with which is assumed.

The Court is mindful of the admonition of *United States v. Vario,* 943 F.2d 236, 239 (2d Cir.1991) that "The invocation of the words 'organized crime,' 'mob,' or 'Mafia' unless there is something more, does not warrant an anonymous jury." 943 F.2d at 241. Here there is something more. The defendants are charged among others with the crime of extortion, by definition a crime of violence, 18 U.S.C. § 16 alleged to have been committed in the

context of a large scale criminal organization. Efforts to interfere with the judicial process have been made in the past by Vincent Gigante, whose attempt to evade prosecution by claiming incompetence to stand trial has been rejected in *United States v. Gigante*, 987 F.Supp. 143 (E.D.N.Y.1996), 982 F.Supp., 140, 159 (E.D.N.Y.1997) aff'd. 166 F.3d 75 (2d Cir. 1999). Efforts to dissuade a cooperating witness from testifying against Vincent Gigante made through the intervention of a soldier in the Genovese Family, Paul Geraci, was proffered to the Court without contradiction in the course of proceedings in *United States v. Aparo*, 01 CR 416 (E.D.N.Y.).

Unlike the defendants in *Fortunato, supra*, who were low level associates in the Genovese Family or the defendants in *Gambino, supra*, with respect to whom there was no suggestion of jury tampering or obstruction of justice in any other respect, Vincent Gigante is alleged to be the boss of the Genovese Organized Crime Family, Liborio Bellomo and Ernest Muscarella are alleged to be or were acting bosses, Charles Tuzzo is alleged to be a captain, Pasquale Falcetti and Michael Ragusa are alleged to be soldiers and Andrew Gigante and Thomas Cafaro are alleged to be influential associates of that Crime Family. The distinction between the defendants in *Fortunato* and these defendants in terms of their standing in that family and their potential ability to influence and exercise control over its members is of a different magnitude.

The Genovese Organized Crime Family has been the subject of considerable print, audio and visual attention in the past. Vincent Gigante, its reputed boss, has achieved notoriety by his public appearances in pajamas and bathrobes on the streets of the area known as Little Italy in lower Manhattan. This case has already attracted pretrial publicity, but hardly as much as it will surely attract when the trial gets underway.

Although there is a plethora of cases on the subject in this circuit, a recent case in another, *United States v. Edwards*, 303 F.3d 606 (5th Cir.2002), makes a helpful contribution to the substantial body of writing already extant. The factors that Court listed that may support a court's decision to include an anonymous jury are: "(1) the defendants' involvement in organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that, if convicted, the defendants will suffer a lengthy incarceration and substantial monetary penalties; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment .... In view of the totality of the circumstances, the district court must 'make a sensitive appraisal of the climate surrounding a trial and a prediction as to the potential security or publicity problems that may arise during the proceedings.'" 303 F.3d at 613 (internal citations omitted).

A distillation of the many cases that have addressed the legal and societal implications of the jury selection process in general and the selection of an anonymous jury in particular is the requirement in addition to the "sensitive appraisal" of *Edwards*, that a balance be struck between the government's interest in the integrity of the judicial process and the defendant's interest in preserving and safeguarding the presumption of innocence. A balancing of those competing interests in the light of the factors discussed above, cause the scale to tip decidedly in favor of the government.

■ The government has submitted a proposed questionnaire for completion by the prospective jurors. The questionnaire in the *voir dire* process "serves the dual purpose of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). It is the responsibility of the trial court to determine whether a prospective juror can serve without bias and without prejudice for or against either party. In discharging that responsibility, the trial court has broad discretion in determining the questions that are appropriately asked, *Rosales–Lopez v. United States,* 451 U.S. 182, 189, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981), and to insure "that the voir dire is not an overly intrusive inquiry into the private affairs of prospective jurors for the purpose of obtaining personality profiles.... [In other words] when the inquiry has no obvious relevance to actual bias or fairmindedness, the inquiry should be disallowed." *United States v. Serafini,* 57 F.Supp.2d 108, 112 (M.D.Pa.1999).

With those fundamental principles in mind, the Court has examined the proposed questionnaire and views many questions as having no relevance to a prospective juror's ability to serve fairly, without bias or prejudice, as being unnecessarily intrusive and obviously designed to obtain a personality profile. These questions are: 2, 3(to be edited), 4, 7, 8(to be edited), 9, 10, 11(a), (b), (c), 15, 16(to be edited), 17, 18(b), (c), (d), 19(b), 21(b), 22(to be edited), 23, 24(edit) and disallow (b), (c), (d), 25(a)—(k), 26(a)—(c), 27, 28, 29, 30, 31, 32, 33, 34, 36, 37(b), (c)(to be edited), 38(a), (b), 39(edit), 44(edit), 45(a), (b), 48(edit), 50—52(?), 53, 54, 55, 56, 57, 58, 59 (edit), 60, 63, 64, 67, 69?, 71?, 72, 73, 74, 77, 80(edit), 81 (edit), 82(edit), 83?, 84? 85, 86.

The parties are directed to appear on Tuesday, March 11th, at 2:30 p.m. for the purpose of discussing the proposed questionnaire; such other matters pertaining to it as the parties deem appropriate, peremptory challenges and the jury selection procedure.

### B. *The Defendant's Motions*

1. The renewed motion for severance made by Andrew Gigante insofar as it is tied to the selection of an anonymous jury and testimony given by George Barone in the trial of Peter Gotti which has been excerpted in his Memorandum in Opposition to the Government's Motion for an Anonymous and Partially Sequestered Jury and in Further Support of his Motion for Severance, is denied.

■ As regards the anonymous jury aspect of it, the process of selecting a jury is not a matter of constitutional dimension and the empaneling of an anonymous jury is not unconstitutional. The presumption of innocence and an anonymous jury are not mutually exclusive and there is no *per se* rule that the presumption of innocence may not be burdened. *See United States v. Gotti,* 777 F.Supp. 224, 227 (E.D.N.Y. 1991) and cases cited there. The Court has balanced the respective interests of the government and the defendants and, as has been discussed above, found the scale tipping decidedly in favor of the government.

2. The testimony of George Barone does not require a different result. The Court expressed that view and the reasons for it in open court on February 21, 2003. The views and the reasons for it given there are stated more expansively in the Government's Reply Memorandum in Further Support of its Motion for an Anonymous Jury and in Opposition to Andrew Gigante's Motion to Review Grand Jury Minutes. Gov. Reply Mem. 2–6. Racke-

teering Act One and Count Four charge Andrew Gigante and others with extorting Bert Guido and not George Barone. Barone's testimony suggesting that he was extorting Andrew Gigante does not impact negatively on that charge.

3. Vincent Gigante's motion to Examine the Grand Jury Minutes.

This motion requests the Court to order the disclosure of the grand jury minutes pertaining to Racketeering Act Two of Counts One and Two and Count Four, "and thereupon ordering the dismissal thereof, as well as Counts One and Two in their entirety, *on the ground that the Grand Jury may very well have misled in returning such charges ....* " (emphasis mine) Memorandum of Vincent Gigante Pursuant to Fed. R. Cr. P. 6(e)(3)(E)(ii) and 12(b)(3)(A).

6(e)(3)(E)(ii) provides in relevant part that "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may ... be made when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Rule 12(b)(3)(A) requires that objections based on defects in the indictment be raised prior to trial.

The basis upon which this motion is made is the same excerpt of Barone's testimony previously alluded to. That excerpt, he contends "completely contradicts the essence of the Guido extortion charges and demonstrates that Andrew Gigante was instead the victim." Def. Mem. at 8. His interpretation of the Barone testimony, as has been indicated, does not render baseless the extortion charges in which Bert Guido is alleged to be the victim.

 This fundamental flaw, in this Court's view, of the defendant's reading of Barone's testimony, makes irrelevant his

discussion of the law surrounding the disclosure of grand jury minutes and spares the Court the necessity of explaining at some length why the cases upon which he relies are inapposite. In one of those many cases, *United States v. Guillette,* 547 F.2d 743 (2d Cir.1976), the Court wrote at p. 753 that "we decline to adopt the proposition that grand jury testimony that has merely been thrown open to suspicion by post-indictment events is an invalid basis for an indictment. Such a rule would necessitate judicial review of the credibility of grand jury witnesses, an exercise that would seriously infringe upon the traditional independence of the grand jury. We consequently hold that where subsequent events merely cast doubt on the credibility of grand jury witnesses, due process does not require the prosecution to notify the grand jury of those events and seek a new indictment." That holding suffices to deny this motion based upon the speculation "that the Grand Jury may very well have been misled ...."

SO ORDERED.