The UNITED STATES of America,

v.

Hosea JACKSON, Petitioner–
Defendant.

Nos. 1:13–CV–930, 1:09–CR–407.

United States District Court,
N.D. New York.

Signed Aug. 27, 2014.

Hosea Jackson, Pro Se, Otisville, NY.

Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, Robert A. Sharpe, Esq., Ass't United States Attorney.

### MEMORANDUM—DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

Defendant Hosea Jackson ("Jackson" or "defendant") proceeding pro se, moved pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed on him following his conviction, after a jury trial, of unlawfully obstructing commerce through robbery and using and carrying firearms during and in relation to, and possessing firearms in furtherance of, a crime of violence. The United States of America (the "Government") opposed and defendant replied. The motion was considered on its submissions without oral argument.

## II. FACTUAL BACKGROUND [1]

### A. Offense Conduct

On July 30, 2009, a federal grand jury sitting in the Northern District of New York returned an indictment charging Jackson with two violations of federal law: (1) unlawfully obstructing commerce through robbery in violation of 18 U.S.C.

---

1. The factual narrative is derived from a review of the entire docket in this case, including the Pre–Sentence Investigation Report, Jackson's various motion papers, and the Government's opposition brief.

§ 1951(a) (the "Hobbs Act"); and (2) using and carrying firearms during and in relation to, and possessing firearms in furtherance of, a crime of violence in violation of 18 U.S.C. § 924(c).

These charges stemmed from Jackson's involvement in the armed robbery of Canaan Sunoco, a gas station in Columbia County, New York, on December 20, 2002. On that date, defendant and two criminal confederates, Andre Decker ("Decker") and Antonio Castro ("Castro"), drove to Canaan Sunoco in a maroon minivan. While Castro waited inside the vehicle, the other men entered the store and approached the owner, Dharam Bhatti ("Bhatti"). Decker aimed a rifle at Bhatti's head and forced him to open the cash register, taking approximately $1,000. Defendant then forced Bhatti to enter the store's office and demanded more money at gunpoint. At some point during this encounter, Decker fired a round from his rifle into the floor of the gas station, causing bullet fragments to strike Bhatti in the lower leg and foot.

Witness Michael Opalka ("Opalka") arrived at the Canaan Sunoco while this robbery was in progress. Opalka observed the maroon minivan parked outside with a driver in the front seat as he walked to a restroom behind the gas station. While Opalka was using the restroom, Castro pulled the minivan to the front of the store and beeped the horn. Decker and Jackson exited the store and escaped in the minivan, but not before defendant aimed a handgun at the front of the gas station and fired a round through the plate glass window. Although the gunmen wore masks and gloves, Bhatti was able to iden-

tify both as African–American men from their voices.

The very next day, officers with the Albany Police Department arrested Castro and Decker as they attempted to pawn some jewelry stolen in a previous robbery in Massachusetts. Castro eventually cooperated with police, providing two written statements outlining his participation in the Canaan Sunoco robbery. Largely due to Castro's cooperation, Jackson and Decker were indicted together in a March 23, 2006 superseding indictment. In 2008, Decker pleaded guilty and agreed to testify against defendant. Decker's account of events corroborated Castro's earlier accounts of the gas station robbery.

**B. The Jury Trial, Verdict, and Sentencing**

On February 17, 2011, Jackson's four-day jury trial began in Utica, New York. Defendant, represented by attorney Thomas Marcelle ("Marcelle"), primarily argued that the Government had failed to carry its burden of proof with respect to defendant's involvement as the third member of the Canaan Sunoco robbery.[2] Defendant also argued that although Castro and Decker had pleaded guilty and their accounts of both the gas station and earlier jewelry store robberies were consistent, they had falsely implicated defendant in the Canaan Sunoco robbery to obtain favorable plea bargains from the Government. Ultimately, the evidence at trial established that two men, including Jackson, entered the Canaan Sunoco and robbed Bhatti at gunpoint. The jury convicted Jackson on both counts and he was sentenced principally to 270 months' imprisonment.

---

**2.** This argument is based on conflicting accounts of the Massachusetts jewelry store robbery. Decker claimed that he and Jackson had entered the jewelry store while Castro remained in the minivan. However, an eyewitness to the jewelry store robbery identified Decker and Castro, but not defendant, in a photographic array.

### C. *Jackson's Direct Appeal*

Jackson took a timely direct appeal. Represented by Attorney Arza Feldman, ("Feldman") who was appointed on his behalf, defendant argued the indictment: (1) was duplicitous as to Count Two; (2) failed to allege a mens rea element; and (3) violated the Interstate Agreement on Detainers ("IAD"). Defendant also argued: (4) his compulsory process rights under the Sixth Amendment were violated by the district court's failure to compel Jose Penaro, a New York State prisoner whom the defense wished to call as a witness, to testify; and (5) the district court failed to give a missing witness instruction when Detective Eugene O'Hanlon failed to appear at trial.

By mandate issued April 19, 2013, the U.S. Court of Appeals for the Second Circuit affirmed Jackson's conviction and sentence. *United States v. Jackson*, 513 Fed. Appx. 51 (2d Cir.2013) (summary order), *cert. denied*, —— U.S. ——, 133 S.Ct. 1848, 185 L.Ed.2d 852 (2013) (Mem.). The Circuit rejected defendant's duplicity and mens rea arguments because he could not show prejudice to his defense. Likewise, the Circuit rejected defendant's challenge pursuant to the IAD because many of the periods of delay were attributable to defendant himself. Finally, the Circuit upheld the district court's exercise of discretion regarding its refusal to compel Jose Penaro to testify or to issue a missing witness instruction. Defendant's petition for a writ of certiorari was denied on April 15, 2013. On August 5, 2013, defendant filed this motion for collateral relief.

### III. *LEGAL STANDARDS*

#### A. *Section 2255*

██ Section 2255 permits a court to "vacate, set aside or correct" a conviction or sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). A properly filed § 2255 motion must allege that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* Accordingly, collateral relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

Because Jackson is proceeding pro se, his submissions will be "liberally construed in his favor," *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir.1995), and will be read "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001) (internal quotation marks omitted). However, a court "need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir.2009) (citations omitted).

#### B. *Ineffective Assistance of Counsel*

A defendant seeking to attack his sentence based on ineffective assistance of counsel must show: "(1) that counsel's performance fell below an 'objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Kieser v. New York*, 56 F.3d 16, 18 (2d Cir.1995) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a "strong presumption" that counsel's assistance was reasonable, and "every effort [should] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. In evaluating such a claim, a court is obliged to review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial. *See Berghuis v. Thompkins*, 560 U.S. 370, 389, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052)). In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

### C. *Claim Preclusion*

Two separate rules of claim preclusion apply to § 2255 motions. *See Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir.2010). First, the "mandate rule" bars re-litigation of issues that were resolved, either explicitly or implicitly, by the reviewing court on direct appeal. *Id.* at 53–54. Second, "procedural default" bars claims that could have been brought on direct appeal unless the petitioner can show cause and prejudice. *Id.* at 54.

However, the U.S. Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). The Second Circuit has extended *Massaro's* protections to allow a defendant "to bring *Strickland* claims [in a § 2255 motion] that could have been brought on direct appeal even if they had previously brought separate *Strickland* claims—i.e. claims with distinct factual predicates—on direct appeal." *Beras v. United States*, 2013 WL 1155415, at *12 (S.D.N.Y. Mar. 20, 2013), *reconsideration denied*, 2013 WL 2420748 (S.D.N.Y. June 4, 2013) (citation omitted). Accordingly, "the only barrier to raising ineffective assistance claims in a Section 2255 proceeding after raising such claims on direct appeal is the mandate rule, i.e., strategies, actions, or inactions of counsel that gave rise to an ineffective assistance claim adjudicated on the merits on direct appeal may not be the basis for another ineffective assistance claim in a Section 2255 proceeding." *Id.* (citing *Yick Man Mui*, 614 F.3d at 57).

### IV. *DISCUSSION*

Jackson's § 2255 motion initially asserts only four grounds for relief, but he has also submitted a 165–page "memorandum of law," 314 pages of attached exhibits, an 87–page reply brief, and a 6–page supplemental memorandum purporting to identify a total of twenty ostensibly distinct claims. *See* ECF No. 111. A review of these various filings reveals that defendant has a sufficiently basic understanding of the limits of collateral relief available on a § 2255 motion to know that ineffective-assistance claims "may be brought ... whether or not the petitioner could have raised the claim on direct appeal." *Massaro*, 538 U.S. at 504, 123 S.Ct. 1690.

However, these filings also "exemplif[y], unfortunately, what is proving to be the 2255 tactic of choice ... namely, the ferrying of stale, meritless claims across the obstacles of time and valid procedure by disguising them as attempted reproaches against counsel." *Davis v. United States*,

2010 WL 3036984, at *1 (E.D.N.Y. July 30, 2010). The vast majority of these claims are not "bona fide objection[s] to the quality of counsel's representation," but merely use the phrase "ineffective assistance" as "the ticket of admission to section 2255 proceedings." *Id.* (footnote omitted). Nevertheless, mindful of defendant's pro se status, these claims are addressed to the extent a cognizable legal argument was identified among the various theories "shoehorned into the idiom of ineffectiveness." *Id.*

### A. Due Process (Grounds Nineteen and Twenty)

 Jackson contends that application of the "brandishing" and "discharge" enhancements found in 18 U.S.C. § 924(c), which resulted in the application of a mandatory minimum term of imprisonment of 120 months, violated his Sixth Amendment right to a trial by jury as articulated in *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013).

 "The Sixth Amendment provides that those 'accused' of a 'crime' have the right to a trial 'by an impartial jury.' This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Id.* at 2156 (quoting U.S. Const. amend. VI). In *Apprendi v. New Jersey,* the U.S. Supreme Court held that facts leading to an increased statutory *maximum* are considered "elements" for purposes of this Constitutional guarantee. 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Therefore, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* In *Alleyne,* the U.S. Supreme Court extended

*Apprendi's* constitutional guarantee to facts triggering a statutory mandatory *minimum* sentence. *See* 133 S.Ct. at 2163.

Here, Jackson's conviction on Count Two would ordinarily have subjected him to a five-year mandatory minimum term of imprisonment. *See* 18 U.S.C. § 924(c). However, § 924(c) also provides for two sentencing enhancements: an increase to a seven-year mandatory minimum for "brandishing" a firearm and a further increase to a ten-year mandatory minimum for "discharging" one. §§ 924(c)(1)(A)(ii)-(iii). As defendant correctly argues, during sentencing proceedings the district court found that he was subject to this ten-year mandatory minimum even though the jury "was never instructed to find specific elements that a firearm was brandished or discharged." Def.'s Mem. 141.

It is true that the district court's finding that defendant had discharged the firearm, made by only a preponderance of the evidence at sentencing, runs afoul of the current state of the law as modified by *Alleyne.* However, "*Alleyne* did not announce a new rule of law made retroactive on collateral review." *United States v. Redd,* 735 F.3d 88, 92 (2d Cir.2013) (per curiam). Therefore, its expanded protections only extend to cases that were "pending on direct review or not yet final" as of June 17, 2013, the date it was decided. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). "Finality attaches when [the U.S. Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States,* 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (collecting cases). Unfortunately for defendant, the U.S. Supreme Court denied his petition for a writ of certiorari

on April 15, 2013. *See Jackson,* 133 S.Ct. 1848 (2013) (Mem.). Because defendant's conviction was already "final" for purposes of collateral review when *Alleyne* was decided on June 17, 2013, its expanded protections do not apply to his sentence. Accordingly, this claim will be denied.

### B. *Motion for Reconsideration* (Ground One)

■ Jackson next contends that Attorney Marcelle was ineffective for failing to "re-file for another review the hearing court's decision and order that was based upon an erroneous view of the record." Def.'s Mem. 1. The thrust of defendant's argument is that the district court's November 9, 2010 Memorandum—Decision and Order ("Pre–Trial MDO"), 749 F.Supp.2d 19 (N.D.N.Y.2010) improperly rejected three of defendant's challenges to the sufficiency of the indictment against him.

Jackson had initially moved to dismiss the indictment because: (1) the statute of limitations had expired; (2) Count One failed to allege the requisite mens rea element; and (3) Count Two was duplicitous. Defendant now renews these same arguments in his claim for collateral relief by arguing that Attorney Marcelle should have moved for "another review"—presumably a motion for reconsideration—of the issues disposed of in this Pre–Trial MDO and that this failure constitutes ineffective assistance as contemplated by *Strickland.*

■ The standard for granting a motion for reconsideration—the motion for "another review" that Jackson desires—is "strict," *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995), and a previous ruling will only be reconsidered and vacated if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3)

it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky,* 899 F.Supp. 923, 925 (N.D.N.Y.1995) (McAvoy, C.J.) (citations omitted).

Here, Jackson fails to identify any facts or circumstances to even suggest that the "strict" standard for reconsideration would have been met. Rather, defendant simply renews arguments that Attorney Marcelle initially made to the district court; arguments already rejected in the Pre–Trial MDO. Defendant has not articulated any reason to believe such a motion would have succeeded. *United States v. Tate,* 523 F.Supp.2d 165, 169–70 (D.Conn.2007) ("[Defendant's] blanket assertion that counsel was ineffective for failing to file pre-trial motions does not adequately demonstrate that counsel acted unreasonably .... [nor has defendant] stated which pre-trial motions he would have liked his attorney to file."). Accordingly, this ground will be denied.

### C. *Constructive Amendment* (Grounds Two and Four)

■ Jackson next contends that Attorney Marcelle was ineffective for "allowing the Government without objection to try [him] ... [where] the statue's [sic] material element's [sic] was erroneously broadened by adding foreign commerce to the indictment, and an industry that affects interstate and foreign commerce." Def.'s Mem. 9. Defendant contends that this was a "constructive amendment of the statue [sic]" because "[t]here is nothing material that allows for an added element of foreign commerce." Def.'s Mem. 10, 12.

■ "A constructive amendment occurs when the government's presentation of evidence and the district court's jury instructions combine to 'modify essential elements of the offense charged to the

point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury.' " *United States v. Vebeliunas,* 76 F.3d 1283, 1290 (2d Cir.1996) (quoting *United States v. Clemente,* 22 F.3d 477, 482 (2d Cir.1994)). The offense charged by the grand jury under the Hobbs Act "prohibits robberies that 'in any way or degree' obstruct or affect commerce, 18 U.S.C. § 1951(a), language that, as the Circuit has held, requires proof of only a 'de minimis' effect on commerce." *Davis,* 2010 WL 3036984, at *2 (citations omitted). "This 'possibility or potential of an effect on interstate commerce[ ]' is satisfied in the small grocery-store setting as long as the robbery 'impairs the ability of the local enterprise to acquire—whether from out-of-state or in-state suppliers—goods originating out-of-state.' " *Id.* (internal citation and citation omitted).

Here, the required de minimis effect on commerce, whether interstate or foreign, was met. The robbers took approximately $1,000, an injury that "impair[ed] the ability of [the store] to acquire—whether from out-of-state or in-state suppliers—goods originating out of state." *United States v. Elias,* 285 F.3d 183, 189 (2d Cir.2002), *cert. denied,* 537 U.S. 988, 123 S.Ct. 430, 154 L.Ed.2d 356 (2002) (citation omitted). Because there is no merit to Jackson's constructive amendment claim, Attorney Marcelle cannot be held ineffective for failing to object on that basis at trial. *See United States v. Kirsh,* 54 F.3d 1062, 1071 (2d Cir.1995) (denying an ineffective-assistance claim, in part, because the motions not pursued by counsel were without merit); *see also Clark v. Collins,* 19 F.3d 959, 966 (5th Cir.1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very 'opposite"). Accordingly, these grounds will be denied.

**D.** *Failure to Investigate* (Grounds Three and Six)

 Jackson next contends that Attorney Marcelle was ineffective because he "failed to investigate any of defendant's alibi witnesses or present them at trial" and for characterizing the police's search of Annie Milner's van as being pursuant to a "search warrant." Def.'s Mem. XIV, 14.

"Decisions concerning investigation and strategy, including the arguments to stress, witnesses to call, motions to make, and lines of inquiry to pursue, 'fall squarely within the ambit of trial strategy and, if *reasonably made,* cannot support an ineffective assistance claim.' " *Guidice v. United States,* No. 03 CV 4983(SJ), 2007 WL 1987746, at *3 (E.D.N.Y. July 3, 2007) (quoting *United States v. Smith,* 198 F.3d 377, 386 (2d Cir.1999)) (emphasis added).

Here, Jackson contends that Ms. Milner should have been called as a witness because "she swore that she ha[d] control of her van in her personal custody on December 20, 2002, and that she had not loaned it out to anyone" and this would have "casted a reasonable doubt in the jury's mind." Def.'s Mem. 16. But although defendant contends that the minivan "was the key material element the government was depending on," he has not shown that Attorney Marcelle's decision not to call Ms. Milner at trial was unreasonably made. Rather, the record reveals that Attorney Marcelle entered a stipulation into the record detailing the substance of an interview with Ms. Milner: "On February 7th, 2003, Annie Milner was interviewed and maintained that she knew nothing about Jackson's involvement in any criminal activity. Milner gave consent . . . to a search of her apartment and . . . [the] van that Jackson was known to drive. Both were searched with negative results." ECF No. 107, 128.

Jackson has failed to describe how Attorney Marcelle's decision to choose this avenue for introducing Ms. Milner's testimony, as opposed to calling her in person, was constitutionally unreasonable. *See United States v. Eyman*, 313 F.3d 741, 743 (2d Cir.2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel.") (internal citations omitted); *U.S. ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974), *cert. denied sub nom.*, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974) (citations omitted); *see also Skinner v. Duncan*, 2003 WL 21386032, at *40 (S.D.N.Y. June 17, 2003) (Report & Recommendation) (noting that "[t]he decision of whether to call or bypass a particular witness is a question of trial strategy which courts will practically never second-guess" (citations omitted)). Likewise, defendant has not specifically identified how Attorney Marcelle's apparently mistaken statement that the police had searched the minivan pursuant to a warrant (as opposed to receiving consent from Ms. Milner) resulted in prejudice to his defense. *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). Defendant has made "only the most conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict." *United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir.2003). Accordingly, these grounds will be denied.

**E. *Limiting Instruction* (Ground Five)**

Jackson next contends that Attorney Marcelle was ineffective "for not calling a mistrial" because the "trial court ... put [defendant] under a presumption of guilt" by issuing a specific instruction to the jury about defendant's prior acquittal on charges related to a jewelry store robbery in Massachusetts. Def.'s Mem. 26–28.

This argument is entirely without merit. The district court made it perfectly clear that it intended to exclude any evidence of the Massachusetts jewelry store robbery, including any evidence of "any facts that the defendant was acquitted of any charges in Massachusetts for that robbery." ECF No. 104, 10. When Attorney Marcelle indicated his intention to elicit the facts of that case for the purposes of cross-examination, the court specifically inquired as to whether the defendant assented to this course of trial strategy:

> THE COURT: Mr. Jackson, stand up. I want—you heard what [has] just been said and I want to make it clear that it's—it's my opinion that this testimony of the details about the Massachusetts jewelry robbery is very prejudicial to you and I'm prepared to keep it out of the—out of the case and I don't want you coming back later and saying you had ineffective assistance of counsel when he agreed to allow that testimony to go in and had no objection to it. So I want your—you to tell me that you concur with what your counsel is doing and that you have no objection to the evidence going in....
>
> THE DEFENDANT: Yes, your Honor.

ECF No. 104, 12–13. Following the introduction of this testimony, the district court issued the following limiting instruction to the jury:

> THE COURT: You are instructed on the following with regard to the acquittal Mr. Jackson in Massachusetts. The acquittal, one, does not mean that Mr. Jackson was innocent of participating in the jewelry store armed robbery. It does mean that the state of Massachu-

setts was unable to prove his guilt for that crime beyond a reasonable doubt. And, two, it does not mean that Mr. Jackson did not participate in this Sunoco gas station robbery. It does mean that you must consider that fact with all of the other evidence to carefully weigh the testimony of both Mr. Decker and Mr. Castro. You'll receive a further charge in that regard with my final charge to you, members of the jury.

*Id.* 111–12 (paragraph break omitted).

■■■ Jackson apparently takes issue with the district court's admonishment that although defendant had been acquitted in state court, "[i]t does not mean he did not participate in this [ ] armed robbery." Def.'s Mem. 28. However, it is black letter law that "evidence of a prior acquittal ... does not prove innocence but rather merely indicates that the prior [proceeding] failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." *United States v. Gambino,* 818 F.Supp. 536, 539 (E.D.N.Y. 1993) (quoting *United States v. Kerley,* 643 F.2d 299, 300–01 (5th Cir.1981)); *see also United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984) ("[A]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt."). The limiting instruction at issue here did not create a presumption of guilt, but rather reminded the jury that the evidence of the prior robbery was limited in scope and purpose, and the outcome of that proceeding should not control the outcome of the jury's deliberations in this prosecution. *United States v. Snype,* 441 F.3d 119, 129–30 (2d Cir.2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions."). Accordingly, this ground will be denied.

#### F. *Right to Testify* (Ground Seven)

■■■ Jackson next contends that Attorney Marcelle prevented him from testifying at trial. Def.'s Mem. 35. The accused has a right to testify grounded in the Due Process Clauses of the Fifth and Fourteenth amendment, *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), and defendant is certainly correct to state that the ultimate decision regarding whether to testify was his own. *Brown v. Artuz,* 124 F.3d 73, 78 (2d Cir. 1997) ("Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, ... the ultimate decision regarding whether to testify belongs to the defendant." (internal citation omitted)).

However, even assuming arguendo that Attorney Marcelle somehow denied defendant his right to testify (which Jackson fails to establish beyond merely conclusory allegations), defendant cannot establish that the result at trial would have been different had he testified. *See, e.g., Rega v. United States,* 263 F.3d 18, 22 (2d Cir. 2001) (noting defendant's proposed testimony "provided no evidence of significance that is not wholly dependent on either his credibility or on the incredibility of the witnesses against him"). Defendant claims he would have testified that the minivan Castro described was not Ms. Milner's van "because [Milner] did not have any bench seating in her van" and that this fact "would have proved that Jackson was not involved in any armed robbery." Def.'s Mem. 40, 44. But considering this proposed testimony in contrast with the other evidence as well as the live testimony of Castro and Decker, it would not have altered the jury's decision, especially given that Attorney Marcelle had already attempted to attack the credibility of the witnesses' testimonies during cross-exami-

nation. As the Second Circuit has previously expressed, where the evidence of guilt is very strong, "there is not too much the best defense attorney can do." *United States ex rel. Testamark v. Vincent*, 496 F.2d 641, 643 (2d Cir.1974) (citation omitted). Accordingly, this ground will be denied.

### G. *Grand Jury Testimony* (Ground Eight)

Jackson next contends that Attorney Marcelle was ineffective for "not moving for inspection of the grand jury transcripts" because Decker and Castro "gave false information to the grand jury." Def.'s Mem. 49. Defendant seems to contend that the allegedly false testimony given to the grand jury by both Decker and Castro "inflamed the grand jury" and resulted in an erroneous finding of probable cause. Def.'s Mem. 50.

██ But the grand jury merely charged Jackson. "It is well established that a guilty verdict at trial remedies any defects or errors in the grand jury indictment." *James v. United States*, 2002 WL 1023146, at *12 (S.D.N.Y. May 20, 2002) (Report & Recommendation) (collecting cases). Defendant utterly fails to articulate how this earlier probable cause finding, even if erroneous, resulted in specific prejudice to his defense at trial as required by *Strickland*. Accordingly, this ground will be denied.

### H. *Substantive Challenges* [3]

██ Jackson brings either direct challenges to the trial court's actions or poorly disguised ineffective-assistance arguments related to the proceedings in the district court. For instance, defendant summarily contends that the "trial court denied [ ] his right to a fair trial," and that his conviction

for "aiding and abetting" cannot be sustained. Defendant also contends that Attorney Marcelle was ineffective for failing to move for "dismissal of the indictment" when the trial court erroneously instructed the jury "that the government could not and did not prove an essential element" of the charge" and for "allow[ing] the trial court to deny [defendant] his aiding and abetting defense." Def.'s Mem. 54, 56, 67, 70, 90.

These are general objections to rulings made by the district court during the course of the trial. In addition to being meritless, these are substantive claims that should have been, and were not, raised on direct appeal. *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992) ("[F]ailure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice."). Defendant has shown neither cause nor prejudice for failing to raise these claims on direct appeal. Accordingly, these grounds will be denied.

### I. *Sentencing Objection* (Ground Eleven)

Jackson next contends that Attorney Marcelle was ineffective for "not objecting with Jackson as to the sentencing factors" during his sentencing. Def.'s Mem. 61. Defendant's memorandum recounts the sentencing proceedings before the district court and summarily concludes that "defense counsel's errors are a structural error of the trial mechanism." Def.'s Mem. 64. It is unclear exactly what defendant believes his attorney should have objected to at sentencing—aside from perhaps the entire proceeding. "The failure to include a meritless argument does not fall outside the wide range of professional competent

---

3. Grounds Nine, Ten, Twelve, Thirteen, Four- teen, Fifteen, and Sixteen

assistance to which [a] [petitioner] [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir.2001) (citations and internal quotation marks omitted). Accordingly, this ground will be denied.

### J. *Appellate Counsel* (Grounds Seventeen and Eighteen)

Jackson finally contends that attorney Arza Feldman ("Feldman"), his appellate counsel, was ineffective because he "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Def.'s Mem. 125. Specifically, defendant contends that he has a "straight forward" double jeopardy claim: that the two charges in the indictment "rested on precisely the same theories." *Id.* 127. Notwithstanding defendant's apparent misunderstanding of constitutional Double Jeopardy, this is a version of an argument that was already made by Attorney Feldman and rejected by the Second Circuit during defendant's direct appeal: "It is the defendant's position that the statute creates two separate offenses .... [but] [o]n this record, it is clear that the defendant was not prejudiced by the way that Count Two of the indictment was drafted or charged to the jury. We therefore do not reach the issue of whether § 924(c) defines one or two offenses." *Jackson*, 513 Fed.Appx. at 54.

 "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir.2010) (citation omitted). This rule also bars a § 2255 claim where the factual predicate of that claim was "nonetheless impliedly rejected by the appellate court mandate." *Id.* (citation omitted). Whether express or

implied, Attorney Feldman cannot be ineffective for having raised an argument—articulated in more legally cognizable way, unlike the claims here—that was ultimately already raised and rejected by the appellate court.

 Even assuming, arguendo, this argument was meritorious, not pursued, and sufficiently distinct from the argument rejected by the Circuit, appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *see also Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir.2000) ("Counsel does not have a duty to raise every non-frivolous argument that could be made.").

 Likewise, Jackson's eighteenth ground for relief—that Attorney Feldman failed to pursue the Due Process challenge ultimately sustained in *Alleyne* and discussed above—suffers from the same failure. Def.'s Mem. 131. *Apprendi's* constitutional guarantee had not yet been extended to facts establishing a mandatory minimum sentence. Counsel is under no obligation to pursue every possible avenue of appeal, and Attorney Feldman can hardly be faulted for not pursuing an argument that would have been a likely loser based on the state of the law at that time. *Carrasco v. United States*, 820 F.Supp.2d 562, 568 n. 3 (S.D.N.Y.2011) (noting "contemporary" assessment rule under *Strickland*). Accordingly, these grounds will be denied.

## V. *CONCLUSION*

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (citations omitted).

None of Jackson's various arguments amount to a "plausible claim" of ineffective assistance of counsel and therefore an evidentiary hearing is not required. *See Morales v. United States,* 635 F.3d 39, 45 (2d Cir.2011); *Puglisi v. United States,* 586 F.3d 209, 213 (2d Cir.2009). Because defendant has failed to make a "substantial showing of the denial of a constitutional right," a certificate of appealability will not be issued. 28 U.S.C. § 2253(c).

Therefore, it is

ORDERED that

1. Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED; and

2. A certificate of appealability will not be issued.

IT IS SO ORDERED.