**UNITED STATES of America**

v.

**Makene JACOBS**

**No. CRIM.3:00 CR 227 SRU.**

United States District Court,
D. Connecticut.

June 26, 2003.

## AMENDED SUPPLEMENTAL FINDINGS FOLLOWING REMAND

UNDERHILL, District Judge.

This case is before the court following a remand from the Second Circuit Court of Appeals, prior to briefing or argument of the pending appeal. Makene Jacobs, who was convicted of a narcotics trafficking offense, moved the Second Circuit to remand for an evidentiary hearing on various grounds. The Court of Appeals granted Jacobs' motion in part and remanded the matter "for the limited purpose of making a supplemental determination on whether Jacobs's trial counsel was ineffective because he failed to move to suppress [certain] evidence, and failed to investigate whether the police had conducted a legal search, seizure, and arrest." Mandate at 1 (Apr. 30, 2003).

The parties briefed the issues raised, and on June 20 and 23, 2003 the court held an evidentiary hearing that lasted slightly more than one full day. At the hearing, six witnesses provided live testimony, one witness testified by way of affidavit, and the court received into evidence a number of exhibits. In addition, the court reviewed in camera a substantial volume of material subpoenaed by Jacobs from the City of Bridgeport, with respect to which the City and two individual police officers had filed a motion to quash.

Having considered all of the evidence introduced at the hearing and after applying the standards governing claims of ineffective assistance of counsel, the court concludes that Jacobs was not denied effective assistance of counsel. To the contrary, Jacobs' trial counsel commendably represented a difficult client facing a difficult

## I. Background

In Count Twelve of a Third Superceding Indictment filed on June 20, 2001, Jacobs and a number of other alleged co-conspirators in the Estrada drug organization were charged with conspiracy to possess with intent to distribute one kilogram or more of a substance containing a detectable amount of heroin, in violation of Title 21 U.S.C §§ 841(a)(1) and (b)(1)(A) and 846. In November 2001, Jacobs was tried before a jury over the course of nine days. At trial, the evidence against Jacobs was very strong. In addition to the normal array of government witnesses, the government's case included a surveillance videotape of Jacobs selling narcotics in the PT Barnum Housing Project ("Housing Project") in Bridgeport, Connecticut. Accordingly, there is no dispute that Jacobs was selling drugs and that he was doing so in an area of the Housing Project controlled by the Estrada organization; Jacobs claims, however, that he was not a member of the Estrada organization.

The Estrada organization sold heroin under a variety of brand names, including "Hawaiian Punch." Sergeant Gonzalez testified that he observed and videotaped Jacobs selling narcotics on March 27, 2000, and, in his opinion, Jacobs was selling heroin that day. The government also offered testimony linking Jacobs to the Estrada organization. Jermaine Jenkins, a cooperating witness and former Estrada organization member, testified that Jacobs was actively involved in the Estrada organization and described, with particularity, Jacobs' role in the organization. Viviana Jimenez, another cooperating witness, testified that she sold heroin for Jacobs as part of the Estrada conspiracy.

Officer Bailey testified that, on August 3, 2000, he observed Jacobs and other members of the Estrada organization selling "Hawaiian Punch" within the Housing Project. Bailey observed customers drive up to the defendant, ask him if he had any "Hawaiian Punch," and then be directed to another Estrada organization member who produced an item that the officer, based on his training and experience, recognized as a "bundle" of heroin. Jacobs acted as a lookout for the police during these transactions. Officer Bailey also overheard a customer approach Jacobs, ask him if he had any "Hawaiian Punch," and heard Jacobs answer, "yeah, it's punch." Officer Bailey then directed the Bridgeport Police to arrest Jacobs and other members of the Estrada organization. Police Officers Pierce and Garcia proceeded to Jacobs' apartment and arrested him. Officer Pierce testified that, upon arresting Jacobs he patted him down and found $2,407 in United States currency in his right front pocket. Officer Pierce then brought Jacobs to the living room of the apartment where Jacobs lived with his girlfriend, Leandrea Wright, and detained him there while other members of the Bridgeport Police searched the apartment.

In his defense, Jacobs took the stand and admitted that he was a drug dealer, although he denied being a member of the Estrada organization. Jacobs provided the jury with two explanations supporting his defense. First, Jacobs attempted to convince the jury that, in light of his working full time for the Schrafel Paperboard Converting Corporation in West Haven, Connecticut he would not have had the time to be a leader in the Estrada organization. To buttress this claim, Richard Meir testified that Jacobs had worked for him full time from March 15, 1999 through March 1, 2000. In addition, Benito Rosario testified on Jacobs' behalf, and stated that, although Rosario was a member of the Estrada organization, Jacobs was not a member of the organization. Second, Ja-

cobs argued that the police witnessed him selling cocaine powder for himself, not selling heroin for the Estrada organization. In support of this latter theory, Jacobs admitted that the $2,407.00 was drug-trafficking proceeds, but claimed that the proceeds resulted from his selling cocaine powder for himself. Jacobs also testified that the police did not seize the money from his person. Jacobs' testimony at trial was not credible.

On November 30, 2001, the jury rendered a guilty verdict against Jacobs. On September 26, 2002, this court sentenced Jacobs to a term of life imprisonment.[1] On October 1, 2002, Jacobs timely filed a Notice of Appeal. On March 14, 2003 Jacobs requested the Second Circuit to remand the case to the district court for an evidentiary hearing on whether his trial counsel, Attorney Elliot Warren, rendered ineffective assistance. On April 30, 2003, the Court of Appeals remanded the case to the district court.

Jacobs now claims that Attorney Warren provided ineffective assistance of counsel by failing to move to suppress the $2,407 seized and by failing to investigate two other witnesses, Leandrea Wright and Hazel Moore. Jacobs claims these witnesses would have supported his motion to suppress or alternatively would have cast doubt on Officer Pierce's trial testimony.

## II. Standard of Review for an Ineffective Assistance of Counsel Claim

 A defendant challenging his conviction on the basis of ineffective assistance of trial counsel bears a heavy burden. *United States v. Atherton*, 846 F.Supp. 170, 173 (D.Conn.1994). First, the defendant must demonstrate that trial counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In

making this determination, the court will afford great deference to trial counsel's strategy because:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955), *reh'g denied*, 350 U.S. 955, 76 S.Ct. 340, 100 L.Ed. 831 (1956)). In light of this highly deferential standard, the Second Circuit has defined conduct to be unreasonable only where there is no plausible trial strategy justifying counsel's behavior. *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998); *Eze v. Senkowski*, 321 F.3d 110, 112–13 (2d Cir.2003).

 Second, the defendant must demonstrate that trial counsel's errors prejudiced his defense. *See Atherton*, 846 F.Supp. at 173. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Where, as here, a defendant claims that trial counsel's failure to file a suppression motion constitutes ineffective assistance, the defendant must demonstrate that, if made, the suppression motion would have been meritorious, and the result of the proceeding would likely

---

**1.** Attorney Jose Rojas represented Jacobs at sentencing.

have been different. *United States v. Matos*, 905 F.2d 30 (2d Cir.1990), *citing Kimmelman v. Morrison*, 477 U.S. 365, 375–76, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "In sum, '[t]he benchmark of judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."' *Atherton*, 846 F.Supp. at 173, *quoting Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

## III. Discussion

For the reasons discussed below, Jacobs fails each step of the ineffective assistance inquiry.

### A. *Adequacy of Trial Counsel's Representation*

■ Jacobs first claims that Attorney Warren provided deficient representation by failing to move to suppress the $2,407 seized at the time of his August 3, 2000 arrest. Jacobs claims that the police illegally seized the $2,407 because they seized the money from his apartment without a search warrant or his consent to search the apartment. *See Payton v. New York*, 445 U.S. 573, 586–87, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (recognizing that the Fourth Amendment prohibits the police from making a warrantless and non-consensual seizure in a suspect's home). In light of the highly deferential standard noted above, the court will determine whether Attorney Warren offered a plausible justification for why he chose not to file a motion to suppress. At the evidentiary hearing, Attorney Warren explained that he believed, particularly in light of his determination that he did not have sufficient credible evidence to succeed on a

suppression motion, that it was a sound tactical decision not to file such a motion. Attorney Warren gave several reasons for that decision. First, Jacobs had insisted from the beginning of his representation that he was going to testify at trial. Because Jacobs was going to testify on his own behalf, Attorney Warren was concerned that: (1) anything Jacobs testified to during the suppression hearing could be used to impeach him at trial; *see U.S. v. Jaswal*, 47 F.3d 539, 543 (2d Cir.1995); and (2) the government could more effectively cross-examine Jacobs at trial if it was given a preliminary opportunity to cross-examine him at the suppression hearing. Second, Attorney Warren was concerned that Jacobs would give fraudulent testimony at a suppression hearing. Jacobs had previously conveyed to Attorney Warren that he was prepared to testify falsely regarding his state court guilty plea in order to withdraw his plea, and Jacobs had requested Ms. Wright and another potential witness to testify falsely on his behalf. Third, Attorney Warren did not believe the $2,407 was critical to the government's case in light of the videotape surveillance, Sergeant Gonzalez's, Officer Bailey's and Officer Pierce's testimony, as well as the co-operating witnesses' testimony. Moreover, as part of his defense, Jacobs was not going to deny that he was a drug dealer. Thus, whether Jacobs had the $2,407 on his person or in his apartment was immaterial to his defense. Fourth, despite Jacobs' claim that Ms. Wright and Mrs. Moore would corroborate Jacobs' story that the police did not seize the $2,407 from his person, Ms. Wright emphatically informed Attorney Warren that she could not corroborate Jacobs' story because she was not present at the time of the seizure.[2] Moreover, she informed

---

2. According to Attorney Warren, Jacobs told him that the police seized the money from the living room couch instead of from upstairs. Jacobs also told Attorney Warren that he

should contact Ms. Wright who would confirm that the money was seized from the couch.

Attorney Warren that Jacobs had written to her and asked her if she would testify falsely on his behalf, claiming that she had witnessed the police seizing the money from the apartment, rather than from his person. Ms. Wright then promised Attorney Warren that if he asked her or her mother, Hazel Moore, who lived across the street from Jacobs, to testify on Jacobs' behalf, she would deliver Jacobs' letter requesting fraudulent testimony to the United States Attorney's Office.[3] Thus, Attorney Warren had reason to believe that neither Ms. Wright nor Mrs. Moore[4] could have provided truthful testimony to contradict Officer Pierce. In addition, their testimony would have potentially led to exposing Jacobs to additional criminal charges for obstruction of justice. Attorney Warren, therefore, wisely decided not to call Ms. Wright and Mrs. Moore at a suppression hearing. Sixth, in light of Ms. Wright's threat to go to the United States Attorney's Office, and the other repercussions that could result from a suppression hearing mentioned above, Attorney Warren consulted Jacobs and they both agreed it was not in his best interest to file the motion to suppress.

In sum, Attorney Warren presented not only plausible strategic decisions not to file a motion to suppress, but had unquestionably reasonable bases for choosing not to file a motion to suppress. Accordingly, Jacobs' argument that Attorney Warren should have made a motion to suppress fails to satisfy the deficiency prong of *Strickland.*

Alternatively, Jacobs argues that Attorney Warren's representation was deficient because he failed to properly investigate Ms. Wright and Mrs. Moore. Jacobs claims that a reasonable investigation by Attorney Warren would have revealed that Ms. Wright and Mrs. Moore were aware of facts that directly contradicted Officer Pierce's testimony that he seized the $2,407 from Jacobs' person. Jacobs claims that, with their testimony, Attorney Warren would then have been able to secure a motion to suppress the seized money, or alternatively introduce their testimony at trial to cast doubt on Officer Pierce's credibility.

"[A]lthough failure to make a suppression motion is not per se ineffective representation, *Kimmelman,* 477 U.S. at 384, 106 S.Ct. 2574, where trial counsel fails to make a motion to suppress because he neglected 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, then ineffective representation is shown.'" *United States v. Matos,* 905 F.2d 30, 33 (2d Cir.1990), *quoting Kimmelman,* 477 U.S. at 384, 106 S.Ct. 2574; *see also Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

At the evidentiary hearing, Jacobs offered Ms. Wright's affidavit and Attorney Warren's Criminal Justice Act ("CJA") time records as proof that Attorney Warren did not reasonably investigate Ms. Wright. There is no dispute that Attorney Warren did not contact Mrs. Moore. According to her affidavit, Ms. Wright states

---

**3.** Although an argument can be made that Attorney Warren should have asked to see the letter, Attorney Warren likely believed that Ms. Wright was telling the truth about the letter because he was aware that Jacobs had requested another potential witnesses to testify falsely on his behalf. Specifically, Jacobs had requested Richard Meir to expand the

dates during which Jacobs worked at his West Haven job.

**4.** In fact, as adduced at the evidentiary hearing, Mrs. Moore could not have provided contradictory testimony because she was not in the apartment when Jacobs was arrested, searched or allegedly consented to allowing the officers to search the apartment.

that Attorney Warren never spoke to her regarding the facts relating to the August 3, 2000 entry into her home or the seizure of the currency. In the CJA records, there is no entry specifically indicating that Attorney Warren ever spent time with Ms. Wright.

Despite Ms. Wright's affidavit and the CJA records, the court concludes that Attorney Warren sufficiently investigated Ms. Wright as a potential witness for a suppression hearing or trial. The court finds Attorney Warren's entire testimony, and in particular his testimony that he spoke to Ms. Wright on the phone and in person, completely credible. Moreover, the fact that the CJA records do not reflect the short conversations Attorney Warren had with one witness is immaterial and consistent with Attorney Warren's testimony that he did not account for every single minute he spent working on a case, particularly if conversations with witnesses were brief. Although Attorney Warren likely should have asked to see the letter prior to abandoning his investigative efforts, given Jacobs' past experience in requesting potential witnesses to testify falsely, Ms. Wright's extreme reluctance to testify, Ms. Wright's inability to corroborate Jacobs' story, and Ms. Wright's threat to supply the prosecution with incriminating evidence against Jacobs, it was a sound tactical decision to drop the effort to seek her assistance.

In addition, Attorney Warren acted reasonably in deciding not contact Mrs. Moore out of fear of inviting additional criminal charges against his client by Ms. Wright going to the United States Attorney's Office with Jacobs' letter.

### B. *Prejudice Suffered by Jacobs*

■ Even assuming arguendo that Attorney Warren should have filed a motion to suppress, Jacobs must demonstrate that the motion to suppress would have been meritorious. *See Kimmelman,* 477 U.S. at 375, 106 S.Ct. 2574. If Jacobs filed a motion to suppress, Attorney Warren would not have had any additional evidence to corroborate Jacobs' testimony that the search was illegal.[5] As such, the court would have balanced the credibility of Jacobs against the credibility of the Bridgeport Police Officers. At the trial as well as at the evidentiary hearing, Officer Pierce testified that he seized the money from Jacobs' person, and the court found his testimony in both instances credible. Thus, it is unlikely that a motion to suppress would have succeeded.

■ Assuming arguendo that Attorney Warren should have filed the motion to suppress and the motion to suppress would have been meritorious or that Attorney Warren failed to reasonably investigate Ms. Wright and/or Mrs. Moore, Jacobs would still need to demonstrate that, but for Attorney Warren's errors, there is a reasonable probability that there would have been a different outcome at trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Jacobs argues that, if the motion to suppress was meritorious, there would have been minimal evidence linking Jacobs to the Estrada organization. The court finds the opposite to be true. Putting aside the seized money, the government offered significant evidence connecting Jacobs to the Estrada organization. The videotape showed Jacobs personally selling narcotics hand-to-hand in an area of the Housing Project controlled by the Estrada organi-

---

**5.** By their own statements, neither Ms. Wright nor Mrs. Moore was present at the time Jacobs was arrested and initially taken into the living room. Thus, neither could testify whether or not Jacobs consented to a search of the apartment or whether Officer Pierce found money on Jacobs' person.

zation. Officer Gonzalez testified that he believed that the drug Jacobs was selling in the Housing Project was heroin. Officer Bailey witnessed Jacobs' involvement with other Estrada members selling "Hawaiian Punch" on the day of his arrest. In addition, the testimony of the cooperating witnesses directly identified Jacobs as a supervisor in the Estrada organization. All of the evidence overwhelmingly indicated that Jacobs was guilty of conspiracy to possess with intent to distribute one kilogram or more of heroin as part of the Estrada organization.

 Jacobs also argues that if Attorney Warren had reasonably investigated Ms. Wright and Mrs. Moore he would have discovered that they would be able to contradict Officer Pierce's testimony and thereby cast doubt on the government's entire case. Regarding August 3, 2000, Ms. Wright states that she watched from across the street as the police entered her apartment. By the time she entered her apartment, Jacobs was sitting in the living room on the second floor. Shortly after she arrived, a police officer came down the stairs, holding a large bundle of cash, and asked "who's money is this?" Ms. Wright states that the officer was referring to money belonging to Jacobs. At the evidentiary hearing, Mrs. Moore testified, in relevant part, that she was also present in her daughter's living room with Jacobs and Officer Pierce when the police officer came down the stairs with some money in his hand and asked whose money it was.

Even if the court accepts as true everything in Ms. Wright's affidavit and Mrs. Moore's testimony, neither of them were present at the time Jacobs was arrested. Accordingly, they would have been unable

to testify whether Officer Pierce seized money from Jacobs' person or whether another officer found money upstairs.[6] In addition, they would have been unable to testify whether Jacobs gave his permission to the police to search. Accordingly, it is not reasonable to conclude that, if given the opportunity to testify, Ms. Wright and Mrs. Moore would have cast any significant doubt on the government's case, let alone cast enough doubt to the point where the jury would have found Jacobs not-guilty. Accordingly, Jacobs has not demonstrated that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

## IV. CONCLUSION

Pursuant to the Second Circuit's mandate, the court makes the following determinations:

(1) Attorney Warren did not render ineffective assistance by failing to move to suppress the $2,407 or by failing to investigate Leandrea Wright or Hazel Moore.

(2) Assuming arguendo that Attorney Warren should have filed a motion to suppress, the motion to suppress would not have been meritorious.

(3) Assuming arguendo that Attorney Warren should have filed a motion to suppress and the motion would have been meritorious or Attorney Warren failed to properly investigate Leandrea Wright or Hazel Moore, there is no reasonable probability that these errors would have resulted in a not-guilty verdict for defendant Makene Jacobs.

---

**6.** There was no evidence whatsoever that the money supposedly brought downstairs was ever seized by the police or even that the amount of money brought downstairs was consistent with the amount seized.

In short, this court finds no merit to Jacobs' claim of ineffective assistance of trial counsel.