**Martell JORDAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

1:12-CV-00557 EAW

1:07-CR-00019 EAW

United States District Court, W.D. New York.

Signed June 7, 2016

Martell Jordan, Ray Brook, NY, pro se.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, United States District Judge

**INTRODUCTION**

On June 14, 2012, Petitioner Martell Jordan ("Petitioner") filed a Petition pur-

suant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (Dkt. 404).[1] Petitioner seeks to vacate his conviction and sentence on the ground that he was denied effective assistance of counsel by attorney John P. Pieri, Esq. (*Id.* at 4-6). Petitioner claims that his attorney incorrectly advised him as to his mandatory minimum sentence if convicted at trial and, on the basis of this incorrect information, persuaded Petitioner to reject a plea agreement proposal that Petitioner was otherwise inclined to accept. (*Id.* at 7-9). Petitioner further claims that his attorney was ineffective because he (1) failed to call Alonzo Scott and Arthur Jordan as trial witnesses and (2) failed to move for a mistrial based on the Government's introduction of improper "overview" testimony. (Dkt. 404-1 at 9-17).

For the reasons set forth below, the Court denies Petitioner's ineffective assistance of counsel claim to the extent it is based on the failure to call trial witnesses and the failure to move for a mistrial. However, the Court finds there are outstanding questions of fact with respect to Petitioner's ineffective assistance of counsel claim based on the plea negotiations in this matter and as a result, an evidentiary hearing must be conducted on Petitioner's § 2255 petition.

## DISCUSSION

### I. Legal Standard

■ "Under Section 2255 of Title 28, United States Code, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir.2009). "The statute further provides that '[u]nless the motion

and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.'" *Id.* (quoting 28 U.S.C. § 2255). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir.2004) (citing 28 U.S.C. § 2255). "To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi*, 586 F.3d at 213 (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)).

### II. An Evidentiary Hearing is Required Regarding Plea Negotiations

■ As set forth above, the relevant statute provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "[A]n evidentiary hearing is required on a Section 2255 motion only when the papers on the motion, measured by the same standards of competence and admissibility applicable to motions for summary judgment, reveal the existence of a genuine issue of

---

1. All documents related to the instant case were filed in the related criminal case, 1:07- CR-00019, and therefore all docket references appear under that criminal case docket.

material fact." *Lamberti v. United States*, 22 F.Supp.2d 60, 71 (S.D.N.Y.1998). "An evidentiary hearing is not required 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'" *United States v. Sahabir*, 880 F.Supp.2d 377, 383 (N.D.N.Y.2012) (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970)).

■ "[A] defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings after the initiation of formal charges, which has been held to include plea negotiations." *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir.1998) (quotations omitted). "A defendant seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a "plausible" claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" *Raysor v. United States*, 647 F.3d 491 (2d Cir.2011) (quoting *Puglisi*, 586 F.3d at 213). "The procedure for determining whether a hearing is necessary is in part analogous to ... a summary judgment proceeding. ... If material facts are in dispute, a hearing should usually be held, and relevant findings of fact made." *Puglisi*, 586 F.3d at 213.

To establish ineffective assistance of counsel, Petitioner must show both that "'counsel's representation fell below an objective standard of reasonableness'" and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Forbes v. United States*, 574 F.3d 101, 106 (2d Cir.2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "*Prima facie* evidence may include a petitioner's own statement, as was offered here; however, in order for the statement to be sufficiently credible to justify a full hearing, it must be accompanied by some 'objective evidence,' such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised." *Raysor*, 647 F.3d at 495.

■ Here, Petitioner claims that he was offered two plea agreement proposals by the Government, the first of which agreed to recommend a prison sentence of 120 to 125 months, and the second of which agreed to recommend a prison sentence of 84 to 90 months. (Dkt. 404 at 7). Petitioner claims that he rejected the plea offers because his attorney advised him (1) that the evidence against Petitioner was so weak that he was confident of winning an acquittal at trial and (2) that Petitioner's mandatory minimum sentence, if convicted at trial, would be 120 months (when, in actuality, it was 240 months). (*Id.* at 8). Petitioner further alleges that his attorney failed to advise him of the adverse consequences should the Government file an information pursuant to 21 U.S.C. § 851. (*Id.*). Plaintiff states that he was inclined to accept both of the proposed plea agreements offered by the Government before being advised to reject them by his attorney and that "if [he] had been provided accurate information by counsel regarding the sentencing exposure [he] faced if convicted at trial, [he] would have entered into a plea agreement and received a much lower sentence." (*Id.* at 9). Plaintiff was sentenced to 300 months incarceration after he was found guilty on Counts 1 through 4 of the Superseding Indictment at trial. (Dkt. 377).

Pursuant to an Order of the Court dated June 14, 2013 (Dkt. 421), Mr. Pieri has submitted an affidavit dated July 2, 2013 (Dkt. 422) in which he sets forth a different version of the facts surrounding the plea negotiations in this matter. According

to Mr. Pieri, he advised Petitioner to take both the proposed plea agreements offered by the Government, advised Petitioner that the Government would file a sentencing enhancement information pursuant to 21 U.S.C. § 851, and advised Petitioner of the mandatory minimum and maximum penalties he faced if convicted at trial. (Dkt. 422 at ¶¶ 3-14).

■ In determining whether to hold an evidentiary hearing, the Court must first consider whether, accepted as true, the facts alleged by Petitioner would satisfy both prongs of the *Strickland* standard for ineffective assistance of counsel (i.e. that counsel's performance was objectively unreasonable and that Petitioner was prejudiced by counsel's unreasonable performance). With respect to the first prong, if counsel did, as Petitioner claims, "grossly underestimat[e] [Petitioner's] sentencing exposure," he would have "breached his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir.1998) (quotation omitted) (affirming finding of ineffective assistance of counsel where counsel advised petitioner that maximum sentencing exposure would be 120 months, but guideline range for imprisonment was 262 to 327 months, and petitioner had turned down plea offer of 84 months in reliance on erroneous advice). Such a breach would "[fall] below the prevailing professional norms for advising a client during plea negotiations of his maximum exposure to imprisonment at sentencing." *Id.* (quotation omitted).

*Lake v. United States*, 465 Fed.Appx. 33 (2d Cir.2012), relied upon by the Government, does not compel a different conclusion. In *Lake*, the petitioner failed to allege "any actionable professional lapse on [his attorney's] part, such as a deficient investigation, a legal error, or a complete

failure to render advice." *Id.* at 35. Instead, the petitioner's attorney had simply misapprehended the Government's willingness to negotiate a more favorable plea bargain. *Id.* Here, unlike in *Lake*, Petitioner's attorney is specifically alleged to have made a legal error with respect to the potential sentence faced by Petitioner upon conviction.

With respect to the second *Strickland* prong, Petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012). Here, Petitioner affirmatively alleges that he would have accepted the plea offer had he been properly advised, and there is nothing in the record to suggest that the prosecution would have withdrawn the plea offer or that the Court would have rejected the proposed plea agreement. Moreover, the recommended sentences under the proposed plea agreements (120 to 125 months and 84 to 90 months, respectively) are significantly less severe than the 300 month sentence that Petitioner ultimately received.

The Government argues that the Court should deny the Petition because "[Petitioner's] contentions are materially refuted by the affidavit of Mr. Pieri." (Dkt. 425 at ¶ 16). It is true that in the context of a § 2255 petition, it is within the Court's discretion to choose the "middle road" of determining disputed factual issues on the basis of written submissions, rather than

"conducting a full-blown testimonial hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir.2001). The Court is also cognizant, however, that this matter "implicate[s] actions taken by counsel outside the presence of the trial judge and therefore [cannot] ordinarily be resolved ... without ... a hearing." *Armienti v. United States*, 234 F.3d 820, 825 (2d Cir.2000). Deciding this matter on written submissions alone would mean that the Court would not have "either the demeanor evidence or the cross-examination of counsel that would have resulted from a full testimonial hearing." *Chang*, 250 F.3d at 86. Such evidence would be particularly useful in this matter, where the currently assigned judge is not the judge who conducted the trial and therefore has not had the benefit of observing Petitioner or his counsel. Rather, the trial was conducted before United States District Judge Arcara.

Petitioner and Mr. Pieri have provided drastically different accounts of the plea negotiations in this matter. Under the circumstances, the Court concludes that resolving these issues on written submissions would not be appropriate.

## III. Petitioner's Other Claims

Petitioner also argues that his attorney was ineffective because (1) he failed to call Alonzo Scott and Arthur Jordan as trial witnesses and (2) he failed to move for a mistrial based on the Government's introduction of improper "overview" testimony. (Dkt. 404-1 at 9-17). Plaintiff has failed to allege facts related to these arguments sufficient to satisfy the *Strickland* standard, and no evidentiary hearing is required with respect to them. *See Lake*, 465 Fed.Appx. at 35 (no hearing required when the petitioner fails to set forth a *prima facie* claim of ineffective assistance).

## A. Failure to Call Witnesses

Petitioner argues that trial counsel should have called Alonzo Scott and/or Arthur Jordan as witnesses. (Dkt. 404-1 at 9). According to Petitioner, trial counsel unreasonably relied on his belief that the Government would call these witnesses and he would be able to cross-examine them, despite the Government having made no representation that it would call them. (*Id.* at 10).

"[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir.2000) (quotation omitted); *see also United States v. Smith*, 198 F.3d 377, 386 (2d Cir.1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.") (internal quotation marks omitted); *Parks v. Sheahan*, 104 F.Supp.3d 271, 286 (E.D.N.Y.2015) ("[t]he decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel") (quotation omitted); *United States v. Jackson*, 41 F.Supp.3d 156, 166 (N.D.N.Y.2014) ("[t]he decision of whether to call or bypass a particular witness is a question of trial strategy which courts will practically never second-guess") (quotation omitted).

Based upon the record in this matter, Petitioner cannot establish that trial counsel's decision not to call Alonzo Scott and/or Arthur Jordan as witnesses rose to the level of ineffective assistance of counsel. With respect to Alonzo Scott ("Scott"), on March 17, 2008, he told federal agents that in January 2006, he had gone with an

associate named Roderick Woods to 85 Bennett Village Terrace in Buffalo to purchase cocaine from Petitioner. (Dkt. 327-7). On April 2, 2008, Scott informed federal agents that he had lied about certain facts during his March 17th interview. (Dkt. 327-8). Specifically, Scott stated that "Roderick Woods" was a fictional name, and that he had actually been accompanied by his friend Justin Varner, who had subsequently been shot and killed. (*Id.*). Also in April 2008, Scott sent a letter to Petitioner in which he claimed that he had been pressured into providing false testimony against Petitioner and offered to testify on Petitioner's behalf. (Dkt. 327-9 at 2-3). Given the multiple stories told by Scott, trial counsel could have reasonably concluded that Scott was not a credible witness and that his testimony was unlikely to benefit Petitioner. *See United States v. Rumble*, 111 F.Supp.3d 207, 217 (N.D.N.Y.2015) (counsel was not ineffective for failing to call a witness who "had made a number of contradictory factual assertions that called his credibility into question"); *Washington v. Graham*, No. 10–CV–0449, 2011 WL 3610107, at *8 (W.D.N.Y. Aug. 16, 2011) (finding that trial counsel was not ineffective in failing to call two witnesses to testify where "trial counsel could have reasonably concluded that [the witnesses] would not have been credible witnesses").

With respect to Arthur Jordan ("Jordan"), who is Petitioner's uncle, he was present during the execution of the search warrant at 85 Bennett Village Terrace and told federal agents that cocaine and a pistol recovered from the residence belonged to Petitioner and that Petitioner "[did] not work and ... [was] always on the streets." (Dkt. 1 at 5). Petitioner argues that trial counsel should have called Jordan as a witness because Jordan "might very well have resol[v]ed" certain disputed evidentiary issues. (Dkt. 404-1 at 11-12). This is nothing more than speculation, and trial

counsel could have reasonably assumed, based on his prior statements, that Jordan would be an unfavorable witness for Petitioner.

Petitioner's argument that even if trial counsel could have reasonably chosen as a matter of strategy not to call Scott and/or Jordan, his actual reasons for doing so were deficient (*see* Dkt. 428 at 5-7), is misplaced. Under the *Strickland* standard, trial counsel's performance must be *objectively* unreasonable. "In light of this highly deferential standard, the Second Circuit has defined conduct to be unreasonable only where there is no plausible trial strategy justifying counsel's behavior." *United States v. Jacobs*, 270 F.Supp.2d 293, 297 (D.Conn.2003); *see also Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (in assessing an ineffective assistance of counsel claim, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's conduct was not the result of error but derived instead from trial strategy). In other words, if a reasonably effective attorney faced with the circumstances present in this matter could have chosen, as a matter of strategy, not to call Scott and/or Jordan, it is not the role of this Court to attempt to *ex post facto* determine whether Petitioner's counsel in fact was acting out of legitimate strategic reasons or for some other purpose.

Petitioner also has not demonstrated prejudice as a result of trial counsel's failure to call Scott and/or Jordan. Petitioner can only speculate as to what these witnesses would have testified to had they been called at trial. Indeed, ineffective assistance of counsel claims based on the failure to call witnesses are disfavored precisely because "allegations of what a witness would have testified are largely speculative." *Speringo v. McLaughlin*, 202

F.Supp.2d 178, 192 (S.D.N.Y.2002) (quotation omitted). Petitioner's supposition that Scott and/or Jordan might have provided exculpatory evidence is insufficient to establish a reasonable probability that the outcome of the proceeding would have been different had these witnesses testified.

### B. Failure to Move for a Mistrial

■ During the course of Petitioner's criminal trial, the Court reprimanded the Government for improperly introducing "overview" testimony about the drug operation involving Petitioner. (Dkt. 404-1 at 12-15). The Court subsequently struck the testimony of the Government's witness. (*Id.* at 15). Petitioner now argues that his counsel's performance was deficient because at that time, he "made no motion for a mistrial, even though the Court ·. . . had virtually invited counsel to so move." (*Id.*).

The record does not support Petitioner's argument.[2] FBI Special Agent James Jancewicz was the Government's first witness. After testifying about the results of a search warrant executed in the case (T at 54-69), Agent Jancewicz began providing overview testimony as to facts the Government anticipated proving at trial. After less than ten transcript pages of testimony (*id.* at 69-78), Judge Arcara stepped in, dismissed the jury for an early lunch, and informed the Government that the testimony was stricken and the witness would not be allowed to continue after the lunch break, even about fact issues (*id.* at 78-83). Moreover, Judge Arcara advised as to his plan to advise the jury as to what he had done when they returned from lunch. (*Id.* at 81).

Under the circumstances, trial counsel could have reasonably concluded that a motion for a mistrial was not warranted and/or would not have been granted. The Court had already *sua sponte* stopped the testimony and ordered that it be stricken. If the Court had felt that a mistrial was warranted, it would have been within its power to *sua sponte* declare one. *See, e.g., United States v. Hepburn*, 86 Fed.Appx. 475, 477 (2d Cir.2004); *United States v. Desimone*, 119 F.3d 217, 227 (2d Cir.1997). The Court had given counsel a clear indication that it believed the appropriate cure for the improper testimony was that it be stricken. Moreover, and as the Government correctly argues, it is presumed that "a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). Although Petitioner speculates that the jury would have been unable to forget the stricken testimony (Dkt. 404-1 at 16), he has not identified any evidence to support this speculation, nor has he proffered any plausible reason why the stricken testimony was "devastating" to his case. In fact, Petitioner has not cited (nor has the Court found in its own research) a case in which a trial court granted a mistrial due to the introduction of improper overview testimony similar to the testimony at issue here.

Moreover, Petitioner's arguments again ignore the fact that the standard for rea-

---

**2.** The docket does not contain the transcript of Agent Jancewicz's testimony and Judge Arcara's rulings about that testimony. Counsel for Petitioner was unable to locate a copy of the transcript, whereupon at the Court's re-

quest, a copy of the transcript was supplied by counsel for the Government. As a result, the citations to this portion of the record simply refer to "T" and the corresponding page from the transcript.

sonableness is an objective one. It may be the case that an argument could be made that trial counsel's decision not to move for a mistrial was unsound trial strategy. But a reasonable lawyer confronted by these circumstances could have made the decisions Petitioner's counsel made, and so his actions fall "within the wide range of reasonable professional assistance. ..." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) (quotation omitted). Petitioner's counsel was familiar with the jury that had been impaneled and could have decided that a retrial was likely to result in a less favorable jury. Petitioner's counsel also could have concluded that the jury would view the Court's striking of the testimony and abrupt removal of the very first Government witness as unfavorable to the Government and beneficial to Petitioner. These are the sorts of strategic decisions that, even if arguably incorrect in hindsight, do not support an ineffective assistance of counsel claim.

The Court also cannot conclude, based on the record, that there is a reasonable probability a motion for a mistrial would or should have been granted. As noted above, the Court could have *sua sponte* granted a mistrial had it felt one was warranted. In addition, the stricken testimony, while objectionable, was not so prejudicial as to require a mistrial. Indeed, in *United States v. Garcia*, 413 F.3d 201 (2d Cir.2005), one of the cases the Court relied upon in striking the impermissible testimony, the Second Circuit found the admission of similar testimony to be harmless error. *Id.* at 217; *see also United States v. Moore*, 651 F.3d 30, 61 (D.C.Cir.2011) (improper admission of overview testimony was harmless error); *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir.2003) (same). Here, where the Court stopped the overview testimony and ordered it stricken, any potential prejudice was adequately ameliorated.

Moreover, the Court cannot agree with Petitioner's reading of the transcript that Judge Arcara invited a motion for a mistrial. Rather, Judge Arcara had intervened and already explained his plan to address this overview testimony, by striking the testimony, removing the witness from the stand, and indicating that he would advise the jury when they returned from lunch to disregard the testimony. After chastising the Government for presenting the testimony, Judge Arcara then simply asked defense counsel if he had "anything to add." (T at 83). Judge Arcara was very direct in his view of this testimony and plan to address it, and simply completing the record by asking defense counsel whether he had anything to add was by no means some indirect suggestion that a mistrial motion should be made.

Petitioner argues that the stricken testimony that he was co-conspirator Byron Cobb's ("Cobb") "right-hand man" was highly prejudicial (Dkt. 404-1 at 16), but Cobb himself testified that Petitioner was "[his] man," that Cobb taught Petitioner how to make crack and cut cocaine, that Petitioner would sell drugs for Cobb from Petitioner's residence and travel to Detroit with Cobb to purchase drugs, and that Petitioner and Cobb cooked crack cocaine together at Petitioner's residence. (Dkt. 315 at 25-36). Cobb further testified that Petitioner was a "cool dude" who would "have [Cobb's] back" and would "stand there with [Cobb] ... whatever the odds is," and that he trusted Petitioner the same way he trusted his brothers. (*Id.* at 51). In other words, this is not a case where the stricken testimony was inconsistent with the admitted evidence, nor is it a case where there was weak evidence of Petitioner's involvement in the drug conspiracy.

Petitioner has thus failed to demonstrate that a hearing is necessary on his claim of

ineffective assistance of counsel with respect to (1) trial counsel's failure to call Scott and/or Jordan as witnesses and (2) trial counsel's failure to move for a mistrial based on the Government's introduction of improper overview testimony.

### CONCLUSION

For the foregoing reasons, Petitioner's Petition is denied in part—namely, with respect to Petitioner's claims of ineffective assistance of counsel based on trial counsel's failure to call Alonzo Scott and/or Arthur Jordan as witnesses and trial counsel's failure to move for a mistrial based on the introduction of improper overview testimony. However, the Court finds there are outstanding questions of fact with respect to the communications that occurred surrounding Petitioner's plea negotiations, and as a result, will conduct an evidentiary hearing. A telephone status conference to discuss the logistics of the evidentiary hearing will be held on June 27, 2016, at 2:00 PM. Counsel will be provided with call-in instructions via email prior to the conference. Petitioner's personal appearance is not required for the status conference.

SO ORDERED.